FRANK Dr MIERI, PETITIONER-DEFENDANT IN CERTIORARI, v. METAFIELD, INC., RESPONDENT-PROSECUTOR IN CERTIORARI.

Argued January 23, 1941—Decided May 13, 1941.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PERSKIE.

For the petitioner-defendant, *Fleming & Potter.*

For the respondent-prosecutor, *John W. Taylor* (*Everitt Rhinehart,* of counsel).

BROGAN, CHIEF JUSTICE. This is a compensation case and brings up the judgment and the record in the Middlesex County Pleas in the return to the writ. The petitioner for compensation was successful in the Bureau and on appeal the award was affirmed in the Pleas. The issue is whether the inguinal hernia that made itself manifest on April 22d, 1940, and which necessitated a surgical operation upon the petitioner on the following day, was compensable under the statute. The issue here is one of fact. This particular disability, *i. e.*, hernia, has had special attention at the hands of the legislature and the cases of hernia that are compensable are carefully delineated and delimited in the Workmen's Compensation Act. The statutory provision (*R. S.* 34:15-12) is as follows:

"Inguinal hernia is a disease which ordinarily develops gradually, being very rarely the result of an accident. Where there is a real traumatic hernia resulting from the application of force directly to the abdominal wall, either puncturing or tearing the wall, compensation will be allowed. All other cases will be considered as either congenital or of slow development and not compensable, being a disease rather than an accidental injury; unless conclusive proof is offered that the hernia was immediately caused by such sudden effort or severe strain that, first, the descent of the hernia immediately followed the cause; second, that there was severe pain in the hernial region; third, that there was such prostration that the employe was compelled to cease work immediately; fourth, that the above facts were of such severity that the same was noticed by the claimant and communicated to the employer within twenty-four hours after the occurrence of the hernia (days when the business is not in operation, such as Sundays, Saturdays or holidays shall be excluded from this twenty-four hour period); fifth, that there was such physical distress that the attendance of a licensed physician was required within twenty-four hours after the occurrence of the hernia * * *."

It is not claimed in this case that the hernia in question is "a real traumatic hernia resulting from the application of force directly to the abdominal wall" for which compensation

will be allowed. Other than this class of traumatic hernia all other cases of hernia are not compensable unless "conclusive proof" of the five particular elements mentioned in the statute, *supra,* be supplied. That petitioner suffered a hernia is admitted. The employer claims it is not compensable because the proof is not sufficient to meet the requirements of the statute, *supra;* but rather that the hernia is one that developed gradually. The petitioner claims that it is compensable and that he has shown by conclusive proof that the five concomitant incidents, indispensable under the statute, were present. That brings us to the pith of this case, *i. e.,* whether petitioner has proved the five elements by "conclusive proof." What norm or quality of proof satisfies the legislative standard of "conclusive proof?" The term has not been construed or defined in any of our cases. It was decided in *Prino* v. *Austin Co.,* 121 *N. J. L.* 518, that the standard of "conclusive proof" as regards one element of hernia, *i. e.,* prostration, was not met. The authority of that case is not in point. The second syllabus at the head of the opinion is broader than the opinion itself. The usual sources for definition—legal dictionaries and the like—furnish little help. Of course, they define the term "conclusive proof" in general; but an abstract definition is often inept when, as here, we are required to give effect to a word or phrase in its reasonable relationship to the statutory text. It applies not to proof generally in compensation cases but only to those based on hernia that was not caused by the application of traumatic force to the abdominal wall. It might be said that the requirement is that the "conclusive proof" should be so strong as to admit of only one determination; or by contrast that it is proof reasonably sufficient to lead to a conclusion. Some authorities believe that the term "conclusive evidence" is synonymous with "incontrovertible evidence," 23 *C. J.* 8, *i. e.,* evidence so strong as to overbear all other in the case to the contrary. It is also suggested that the term means "uncontradictable," therefore controlling proof. We do not think the legislature had such a harsh and inflexible standard in mind when it called for "conclusive proof" on this type of case; for if such proof were required, *i. e.,* uncontroverted or

incontrovertible, a petitioner would find it almost impossible to meet this standard. It is hard to imagine a case where the party to be charged could not controvert the petitioner's testimony on at least one of the five statutory requirements and this, if uncontroverted proof be necessary to succeed, would be fatal to the petitioner in almost all cases. Certainly that is not what the legislature intended in this field of the law, generally regarded as beneficent to the employe.

We think, first, that the statute, in this class of compensation case, contemplates degree of proof. We think, further, that the statutory phrase should be construed to mean such proof that the fact finder, after hearing the testimony in support of the claim and contrasting and weighing it with that produced to rebut it, is clearly of the view that the claim has been sustained by evidence that is convincing in character. The petitioner must prove that the hernia is the immediate result (*Cf. Borodaeff* v. *Province, &c.,* 109 *N. J. L.* 25; *affirmed,* 110 *Id.* 20) of a sudden effort or strain and the proof of the five requirements must be such as will reasonably negative the inference or conclusion that it was congenital or of slow development or caused by disease rather than an untoward incident (Compare *Borodaeff* v. *Province, &c., supra; McBride Co., &c.,* v. *Kuehn,* 11 *N. J. Mis. R.* 764; 168 *Atl. Rep.* 64; *Sussick* v. *Glen Alden Coal, &c.,* (a Pennsylvania case), 165 *Id.* 658). Consequently it is unimportant whether the conclusive proof required by the statute is challenged or not—that it be contradicted or not—so long as it leaves the mind of the fact finder convinced that the hernia resulted not from disease or congenital weakness but immediately from sudden strain or effort in the course of the employment. So the qualifying word "conclusive," as used in the statute, *supra,* is not to be regarded in a sense that imports to it a quality that will not tolerate challenge or contradiction; but rather in its ordinary sense that the proof is convincing and such that it justifies a conclusion that the statutory requirements of such case were proved. A rigid, inflexible construction of the phrase would require a norm or quality of proof, the equivalent of moral certitude. Such construction we cannot reconcile with the development of the

law of evidence on the civil side in this state or elsewhere. The construction we have placed upon the legislative expression, we think, is in accord with the legislative intention. We now proceed to examine the case on the facts and the law.

The petitioner testified that on the afternoon of April 22d, 1940, he was carrying a box which contained metal pieces. He had got the box from the "cage" where the unfinished work in the plant was kept, walked about sixty feet to his work bench "and in reaching from one bench to the other to lay my work down my foot slipped out and I dropped the box and I experienced a tearing of the tissues down in the groin." He said that he was prostrated; that he had severe pain; that he tried to work but could not and that he immediately examined the affected part and discovered the hernial lump. He reported the matter to his superiors—first, the assistant foreman, and then the general manager, and was sent by the latter to Dr. Forney who advised an operation which was done the following day. The proof as regards pain, prostration, the severity of the case, reporting to the employer, and such physical distress as to require the attendance of a licensed physician was not controverted and satisfied the requirements of the statute, *supra,* as to the second, third, fourth and fifth points particularly set out therein. Petitioner's statement as to the happening was confirmed by two fellow employes who saw him bend over, slip, drop the box, "grab his side, turn white, complain of pain and inability to work," &c. The testimony of the general manager, Mr. Gorsline, confirmed the petitioner's statement to this extent—that on the afternoon of April 22d, 1940, the employe complained of the appearance of a hernial lump; that he looked "white as a sheet;" that "he was all in," and that at the time the employe said, "I just felt something give way and I can't go on;" whereupon the manager sent him to see Dr. Forney. If this were all, the case would be a simple one and the judgment probably would not be here for review, but the prosecutor of the writ contends that there was no proof that the hernia was caused by any mishap on that day.

It is said that the medical testimony in support of the petitioner is not persuasive that the hernia in question was

caused by "sudden effort or severe strain;" that the testimony of Dr. Forney is vague as to what caused the hernia and when it was caused. It is true the doctor does not say that the petitioner's experience of April 22d, was the cause of the hernia but a close analysis of his testimony makes it indisputably clear that it was his opinion that the intense pain to which petitioner testified and which made itself felt on the afternoon of April 22d, was related to the appearance of the hernia. To the direct question as to whether or not the hernia was old or recent Dr. Forney said that it was recent; further that he did not believe the hernia existed before that day. And his findings were arrived at empirically—from examination of the petitioner at the time—and from his history as well. This medical witness was not the petitioner's family doctor or even a doctor of his selection; apparently he was the company doctor. This circumstance lends weight to Dr. Forney's testimony. It is safe to assume that he had no "leanings" towards the petitioner. His testimony was direct and at all times frank. He admitted that a hernia does not always descend at the time of a happening which may be said to be its cause; but we are convinced nevertheless that it was his opinion that the exertion or sudden strain on the day in question, April 22d, caused a rip or tear in the inner abdominal lining and that the hernia at once appeared. Standing alone, this medical testimony might be wanting in sufficient strength to supply the "conclusive" proof on this element of the case required by the statute, *supra,* but when read as a supplement to the testimony of the petitioner and his corroborating witnesses we think the proof is sufficiently conclusive in character to support a finding that the first prerequisite of the statute—that "the descent of the hernia immediately followed the cause," was satisfied.

The main argument of the employer that the petitioner is not entitled to compensation rests on the fact that on April 8, two weeks prior to the date in question, the employe suffered a strain and experienced pain in the area where the hernia later appeared. A statement signed by the petitioner outlining that experience and his history for the two intervening weeks was obtained from the employe at the hospital on April

22d, immediately before the time Dr. Forney operated on him. The statement was written out by an investigator for the Liberty Mutual Insurance Company, the insurer of the employer. That account does not mention any "slipping" in the workroom on April 22d. As regards this the petitioner replies that the statement was not complete; that he failed to say certain things because he was not asked. The referee considered that the statement was not controlling and preferred to believe the sworn testimony of the petitioner rather than the unsworn but signed statement; that the adjuster, acting in behalf of the employe's insurer, in obtaining the statement, asked questions, received answers and then reduced the whole to the form of simple narrative; that the investigator, at the bedside of the petitioner, presumably mindful of the legal requirements of the compensation statute with regard to hernia, asked questions which shaped the scope of the narrative. That statement recited that on April 8th (two weeks before the later experience), while lifting a box from the floor, the employe "felt a sudden sharp pain in the right groin;" that he dropped the box for a moment to get his breath but that "in a second or so I picked up the box and carried it about fifty feet to my place of work;" that he worked all afternoon; that the pain kept increasing; that he reported the matter to the assistant foreman, Mr. Rabinowitz, and later to the manager; that he performed his regular work thereafter until April 22d, "but that he had increased pain each day;" that on the morning of the 22d he examined himself at the plant and found a lump on the right side about as large as an egg;" that he thought "it had been tearing down since April 8th," so that the lump came on April 22d; that he was positive that the occurrence on April 8th, caused the trouble. This then is the crux of the case, and the question is what importance we attach to the statement in our evaluation of the proofs. If we accept it as an uninspired, voluntary statement, free from any suggestion from the questioner it is very damaging to the petitioner's present testimony. We do not accept it as such because, as we read it, we think it possesses evidence of its own shortcomings for full faith and credit. For instance, the statement contains this

sentence: "On April 22d, 1940, was the first time I noticed the lump. *I think it had been tearing down since April 8th, 1940, so that the lump came on April 22d, 1940.*" This last sentence, italicized by us, is hardly the utterance of a lay person. Again, "I am positive that the lift back on April 8th, 1940, caused my trouble." This, too, is scarcely a statement that an injured person, under the circumstances that attended the scene, would make. It would seem to be an unusual circumstance for him to remember the precise date, *i. e.,* April 8th. The previous sentence in the statement about the hernia "tearing down" for the two-week period was one which, if accepted, would destroy his claim for compensation. He probably was unaware of that but in all probability the investigator had that precise point in mind. Another sentence "I had to lift the box * * * I didn't hit or strike my side in any way with the box. It was just the severe lift causing me a strain," &c. This passage referred to the happening of April 8th, and of course tended to negative completely any compensable case of traumatic hernia mentioned in the statute, *supra,* resulting from the application of force directly to the abdominal wall, &c. Contrast this phase of the fact situation with the history which the petitioner gave to Dr. Forney just prior to the operation. At that time—and it is most unlikely he would be untruthful at that juncture—he told Dr. Forney that he experienced no pain between April 8th and April 22d, and that the hernial lump appeared on the later date. Further, the general manager of the company, Mr. Gorsline, during his testimony, said in passing that "he was bowling" with the petitioner several nights after April 8th, and of course prior to April 22d. We venture the thought that a man with pain increasing each day from incipient hernia would not spend his evenings at bowling. In our appraisal of the facts on this issue we are impelled to accept the testimony of the petitioner and that of his fellow employes, supported as it is by the medical testimony of Dr. Forney, the company doctor who performed the operation, that the petitioner has offered conclusive proof that the hernia was immediately caused by such sudden effort or severe strain that occurred on April 22d, and that the

descent of the hernia immediately followed the cause. The fact that he had a sharp pain on April 8th, from sudden strain on that day does not defeat his right to recover for hernia that resulted from like strain on April 22d, which "immediately" followed such strain. The other four elements required by our statute to make out a case of compensable hernia injury are proved in the case by abundant unchallenged evidence.

No medical proof whatever was offered by the respondent. It rested its defense on the statement which we have already discussed. That statement leaves us with many misgivings as regards its value as proof. We attach little or no value to it for reasons that are obvious.

The judgment of the Pleas will be affirmed, with costs. The writ of *certiorari* should be dismissed.