## MORROW RETAIL STORES, Inc. v. HARTFORD ACCIDENT & INDEMNITY CO.

### No. 1813.

United States District Court
D. Idaho, N. D.
May 4, 1953.

Herman J. Rossi, Wallace, and Paul S. Boyd, Boise, Idaho, for plaintiff.

William S. Hawkins and E. L. Miller, Coeur D'Alene, Idaho, for defendant.

DRIVER, District Judge.

Plaintiff brought this action to recover on an insurance policy, issued by the defendant, for merchandise inventory shortage, claimed to have been caused by fraudulent or dishonest acts of plaintiff's employees. A jury trial resulted in a verdict for plaintiff, but the trial court granted defendant's motion for a new trial. The parties have stipulated that the case may be tried before the court, without a jury, on the transcript of the testimony received and the exhibits admitted in evidence on the former trial.

Plaintiff's claim is based upon insuring agreement 1 of the policy, which has a liability limit of $5,000 and is designated "Employee Dishonesty Coverage." It insures against loss sustained through any fraudulent or dishonest acts of plaintiff's employees, acting alone or in collusion with others, including money and securities and other property and including that part of any inventory shortage "Which the Assured Shall Conclusively Prove to Have Been Caused by the Fraud or Dishonesty of Any of the Employees." The policy further provides that:

"If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the employees and the assured shall be unable to designate the specific employee or employees

causing such loss, the assured shall nevertheless have the benefit of this insuring agreement · 1, provided that the evidence submitted reasonably (in case of inventory shortage, conclusively) establishes that the loss was in fact due to the fraud or dishonesty of one or more of the said employees, * * *."

The sole question presented is whether the evidence, as it appears in the record of the former trial, is sufficient to sustain plaintiff's claim of loss under the provision, just quoted, of insuring agreement 1 of the policy. Summarized briefly, the evidence is as follows:

· Plaintiff operated three stores in northern Idaho, but its claim for inventory shortage was based upon the operations of the dry-grocery and produce departments of its Mullan store, for the second and third quarters of the year 1949 and the first and second quarters of the year 1950. During that time, the two departments had the same manager and were physically separated from the other departments of the store. Plaintiff used what is known as the retail method of accounting. At the beginning of an accounting period, a physical inventory of the merchandise stock was taken on a retail price basis of valuation. To the inventory figure, there was then added the total amount of purchases of merchandise during the period, also on a retail basis, that is to say, wholesale cost plus mark-up, and there was subtracted the total merchandise sales, the mark-downs or reductions made in the retail prices of goods sold, and reported spoilage. The result thus arrived at represented the book inventory value. A physical inventory, taken at the close of the period, inevitably would show an amount less than the book inventory, and the shortage would represent the sum total of bookkeeping errors, errors in taking inventories, unreported mark-downs and spoilage, and losses due to outside burglary, customer pilferage, and theft by employees. Physical inventories, taken at the close of the period in which plaintiff claimed its loss occurred, showed such a shortage. There had been no loss by fire or outside burglary. Three different inventories were taken to eliminate, or at least minimize, the possibility of inventory errors. Bookkeeping errors, according to the testimony of plaintiff's witnesses, were very small and tended to cancel out by compensation. Thefts by customers, during the hours the store was open, except in very small quantities, were not possible without discovery by store employees. Moreover, the total of all the imponderable factors, including customer pilferage, was quite constant with little variation in times of normal operation, as shown by past experience in the Mullan store over a period of five years and did not exceed a certain percentage of the total sales. Subtracting that maximum percentage in order to make allowance for such imponderable factors, plaintiff's witnesses computed the inventory shortage, on a wholesale cost basis, to be $5586.24, a sum substantially in excess of the limit of liability of insuring agreement 1 of the policy. Thus, by a process of elimination of all other possible causes, they attributed the shortage to theft by unknown employees. Plaintiff's vice-president and general manager, who had a master's degree "in business" from Harvard University and more than forty years' experience in retail merchandising, testified that, in his opinion, the shortage was · due to employee theft. A certified public accountant, who had examined the books and records of the Mullan store, was called as an expert witness by the plaintiff and expressed the same opinion. There was no expert testimony to the contrary. The manager of the dry-grocery and produce department, who had left plaintiff's employ suddenly, not long before the shortage was discovered, testified, as a witness for the defendant, that he had not stolen any merchandise from the Mullan store and, so far as he knew, no other employee of plaintiff had done so; but, on cross-examination, he admitted that he could not account for the inventory shortage. When asked the question, "Then, the only thing left is theft by some one unknown to you?"—He replied, "Unknown to me, yes, sir."

The crux of the problem presented is the degree of proof to be required of the plaintiff under the provision of the policy, quoted above, that, in the case of inventory short-

age, alleged to be due to fraud or dishonesty of unknown employees, the evidence shall "conclusively" establish the cause of the shortage. Defendant maintains that the word "conclusively," as used in the policy, should be given its strict and literal meaning, and that, therefore, plaintiff has the burden of proving that the claimed loss was due to employee dishonesty by evidence that is incontrovertable, not open to question, and so strong as to overbear everything to the contrary. Plaintiff has failed to meet that burden, defendant points out, since its evidence does not positively exclude the possibility that the loss may have been due to some cause other than employee theft.

Defendant cites two cases in support of its contention, Edwards v. Shreveport Creosoting Co., 207 La. 699, 21 So.2d 878, and Thompson Lumber Co. v. Interstate Commerce Commission, Com.Ct., 193 F. 682. In each case, the court stated what it conceived to be the strict, literal definition of "conclusive evidence," but, it is interesting to note, did not apply its definition by requiring the party having the affirmative of the issue to establish his point by such a high degree of proof. In the first case, the Supreme Court of Louisiana took the position that, in a workman's compensation action, based upon a state statute, it was sufficient for the plaintiff to prove his claim by a fair preponderance of the evidence. In the other case, the old Commerce Court of the United States held that the Interstate Commerce Commission had erred in requiring a shipper, in a reparation action, to prove an issue "conclusively."

■ No case directly in point has been brought to the attention of the court in the present action, but the following general statement in 29 Am.Jur., at page 1138, § 1516, appears to be apposite:

"Under policies requiring direct and affirmative evidence of the burglary, larceny, or theft, the courts refuse to construe the term "direct and affirmative" or "conclusive" evidence in its strict, technical sense, as to do so would render the policy valueless except in the most unusual cases; thus, the fact that the evidence of theft is wholly circumstantial will not defeat a recovery on such policies."[1]

■ In deciding what meaning should be given to the words "conclusive evidence," when used in an insurance policy, the context in which they appear and the purpose which the parties to the contract evidently had in mind should be considered. The words should be given a reasonable construction consistent with such purpose.[2] Here, if the assured is to be held to the high degree of proof, which defendant argues should be required, the insurance coverage of inventory shortage, caused by dishonest acts of unknown employees, would be practically valueless. Manifestly, it would be out of the question for the assured to prove incontrovertibly, or beyond the possibility of error, that a shortage of merchandise, disclosed by the taking of a physical inventory, was due to the dishonesty of some employee in a situation where the identity of the culprit was unknown to the assured. The cause of the shortage could be proved only by circumstantial evidence and by a preponderance of the probabilities, as the plaintiff has undertaken to prove it in the present case.

Some state workmen's compensation statutes require that certain prerequisites be established by "conclusive proof" in order to render non-traumatic hernia compensable. In construing such statutes, the courts, in a number of cases, have held that "conclusive proof" means such proof that the arbiter of the facts, after consideration of all of the evidence, is clearly of the view that the claim has been sustained by evidence that is convincing in character.[3]

■ In the instant case, the conclusive evidence requirement of the insurance

1. For cases in support of the quoted text, see Annotation, 169 A.L.R. 224, 231.

2. Husch Bros. v. Maryland Casualty Co., 211 Ky. 97, 276 S.W. 1083.

3. Di Mieri v. Metafield, Inc., 126 N.J.L. 484, 20 A.2d 39, 41; Di Mieri v. Metafield, Inc., 127 N.J.L. 597, 23 A.2d 564; Grant v. Wark Construction Co., 152 Pa.Super. 214, 31 A.2d 739, 740; Drumbar v. Jeddo-Highland Coal Co., 155 Pa.Super. 57, 37 A.2d 25, 27.

policy evidently was intended to put upon the plaintiff the burden of showing by a degree of proof higher than a mere preponderance of the evidence that its inventory shortage was due to employee dishonesty. However, when the requirement is given a reasonable construction, consistent with the terms of the insurance contract as a whole, it does not appear to necessitate the adduction of incontrovertible, beyond possibility of contradiction, proof, but only evidence that is clear, satisfactory, and convincing to the trier of the facts. The court finds that the evidence offered by the plaintiff measures up to that standard. Judgment will be for plaintiff in the sum of $5,000, the limit of liability under insuring agreement 1.