**NEW AMSTERDAM CAS. CO.**

v.

**W. D. FELDER & CO., Inc.**

No. 14772.

United States Court of Appeals,
Fifth Circuit.

July 30, 1954.

Rehearing Denied Sept. 7, 1954.

826

Allen Wight, Dallas, Tex., for appellant.

Stanley E. Neely and Wayne O. Woodruff, Locke, Locke & Purnell, Dallas, Tex., for appellee.

Before STRUM, Circuit Judge, and DAWKINS and HOOPER, District Judges.

HOOPER, District Judge.

Appellee, W. D. Felder & Company, Inc. (also referred to as plaintiff and as the insured) brought suit against New Amsterdam Casualty Company, the appellant (also referred to as the insurer and as defendant) on a blanket fidelity bond protecting against losses of money or property by reason of dishonest acts of employees. It covered:

"that part of any inventory shortage which the insured shall conclusively prove has been caused by the fraud or dishonesty of any employee or employees."

The case was tried to the Court without a jury, a verdict was rendered in favor of plaintiff in the sum of $57,025.26. The defendant appealed. All of the points insisted upon by appellant may be grouped under five classifications which are discussed below:

(1) It is contended the trial court erred in ruling that plaintiff, who is not the first named assured in the bond sued upon, had the right to maintain the action because of provisions in the bond to that effect. Rule 17(a), Federal Rules of Civil Procedure, 28 U.S.C.A., provides that "Every action shall be prosecuted in the name of the real party in interest", subject to certain exceptions not pertinent here. Appellee suggests that the purpose of inserting the above provision in the bond might have been for the convenience of insurer in connection with collection of premiums and mailing of notices and that it was not inserted for the purpose of burdening the first named insured with the duty of prosecuting all claims in behalf of the other insureds. Whatever might have been the purpose of inserting that clause in the bond, we are clear in our opinion that under the facts of this case this insured was entitled to maintain this action and that no rights of the defendant or of the first named assured in the bond are jeopardized thereby.

(2) It is insisted that the evidence does not show that plaintiff's loss was caused "by the fraud or dishonesty of any employee or employees." Appellee contends that the loss involved was not an inventory loss, but with that contention we do not agree. Tending to show, however, that the loss was caused by dishonesty of employees, the evidence shows the following:

Plaintiff, a cotton mechant, received cotton samples in its sample room. After serving their purpose they were thrown on the floor as loose cotton. Two colored porters, Daniels and Lister, had the duty of rolling and sacking this cotton, and when the sample room reached its capacity taking it to the basement.

It was there placed in bins to which these porters had keys.

Suspecting thefts of this cotton insured employed Burns Detective Agency which placed one of its colored operatives named Glenn in plaintiff's offices as a porter. Glenn soon discovered that Daniels and Lister several times each week were separately taking cotton from the sample rooms and hauling same away in their automobiles. Acting on advance information the detective agency placed a white operative named Smith at this place the night of August 21st, at which time Daniels and Lister were discovered taking this cotton. Daniels was pursued but eluded his pursuers and sold the cotton to a mattress factory from which it was recovered.[1]

■ While we do not agree with appellee in the contention that the sample cotton was not inventory, we do agree with its claim that the requirement in the bond that this loss must be shown by conclusive evidence, should be given a reasonable construction. See Morrow Retail Stores, Inc. v. Hartford Accident and Indemnity Co., D.C., 111 F.Supp. 772 at p. 774, and cases therein cited. Plaintiff's evidence seeking to prove loss by dishonesty of employees is partly direct but mostly circumstantial, and must measure up to the requirements of circumstantial evidence. Where the evidence at most creates "no more than a surmise or suspicion that some of the shortage reflected by the inventories might have been due to dishonesty on the part of an employee or employees", plaintiff cannot recover. Cobb v. American Bonding Company of Baltimore, 5 Cir., 118 F.2d 643, 644.

See also Gaytime Frock Co. v. Liberty Mutual Insurance Co., 7 Cir., 148 F.2d 694. In other cases, however, based upon different facts, judgments for plaintiff have been sustained. See United States Fidelity and Guaranty Company v. Howard, 5 Cir., 67 F.2d 382, 384(4); American Employers Insurance Company v. Johnson, Tex.Civ.App., 47 S. W.2d 463.

■ In the instant case only three or four porters were, during the period of this loss, in the employ of the plaintiff, two of them were proven to have been engaged in stealing this cotton over a period of time involved, there is no testimony connecting any other employee with any thefts, nor is there evidence showing any probability that the loss was occasioned in any other manner. Under these circumstances we think the evidence as to cause of loss was sufficient.

■ (3) We find the evidence sufficient to sustain the amount of the judgment rendered. The gross weight of the shortage was ascertained by subtracting, from the total weights of sample cotton coming into the sample room, the weights of that going out both for sales and for reginning, the difference representing the loss.

Part of this sample cotton came by express; as to that, the weights were taken from express bills which were of file in plaintiff's office.

Other samples, which according to the testimony, ranged in weight from one-half to three-quarters pound were taken from the bales of cotton as they came into the warehouse and then brought to plaintiff's sample room. As to these

---

1. Glenn furnished a very complete affidavit to the insurer dated January 17, 1953 in which he gave an almost day by day account of thefts by these porters, the amounts thereof, and many other details. Glenn also testified on the trial as to many of the facts contained in his statement. Daniels testified on the trial, admitted taking cotton for two years, more or less, stated that on four occasions he had permission from his employer and evidently assumed that permission would cover freedom to take all he desired. His furtive manner of taking, however, was a complete refutation of that assumption on his part. Daniels and Lister would sometimes take cotton together, but at other times separately to avoid "splitting" with the other. Lister confided freely in Glenn but Daniels did not.

plaintiff only sought and recovered on the basis of four-tenths pound per bale.

From the total weights of cotton coming into the sample room there was deducted amounts of such cotton which was sold, also amounts which had been rolled, sacked and carried out for reginning, the difference representing the amount of plaintiff's loss.

As to the dollar value of this shortage there was evidence to the effect that this loose sample cotton after being reginned, was worth one cent to two cents below the market for spot cotton. Plaintiff recovered on a basis of three cents under the current market. These amounts were computed for each of the fiscal years beginning June 1949, 1950 and 1951.[2]

■ (4) Appellant contends the Court erred in admitting in evidence plaintiff's Exhibits 7 and 8 and the testimony of plaintiff's witness, Larry Howard, in connection therewith. Exhibit 7 is a summary sheet prepared by plaintiff's auditor and witness, Larry Howard, which purports to give the weight of cotton samples entering and leaving plaintiff's sample room.

Weights of incoming shipments were taken largely from express bills kept by plaintiff in a voucher file. They would fill 150 boxes, such as one then in the court room, and would occupy a space 5 x 6 x 10 feet, a total of 300 cubic feet. Transcribing of these bills on to summary sheet required approximately six weeks time.

Assuming that defense counsel made timely and sufficient objections to this evidence,[3] the essence of his objections is to the effect that witness Howard was permitted to testify as to summary of contents of documents, which documents were not made available to opposing counsel.

It is particularly insisted that part of this testimony related to records of the Compress Company.

Under some circumstances the objection to these summaries would be meritorious, but under the record of the trial in this case, which we have carefully read and studied, the objection to these summaries is without merit.

■ The principle of law involved here is well stated in Wigmore on Evidence, Vol. 4, Sec. 1230, as follows:

"Where a fact could be ascertained only by the inspection of a

2. By way of illustration, taking the year 1949–1950, the computation was as follows:

| | | |
|---|---|---|
| Weight of samples received by express | 106,587 pounds | |
| Local purchases 2985 bales, 4/10th pounds each | 1,194 pounds | |
| Total | 107,781 pounds | 107,781 |
| Sample cotton shipped | 16,086 pounds | |
| Sold on table 1079 bales, 4/10 lbs. per bale | 432 pounds | |
| Cotton ginned | 46,742 pounds | |
| Total | 63,260 pounds | 63,260 |
| Amount of Shortage | | 44,521 lbs. |

The market for spot cotton being 30.71¢ per pound, the value of this cotton after deducting 3¢, was 27.71¢ per pound which, multiplied by the above shortage, gave a total shortage for the year of $12,336.77.

3. The first objection by defense counsel was "to these computations as based on hearsay (R.53). That objection related to the fiscal year beginning June 1, 1949.

This objection was not renewed as to the two succeeding fiscal years. Defense counsel might have hesitated in view of the ruling of the court to renew his objection. In such cases it is the better practice for the objecting counsel to stipulate with the Court that the first objection should stand throughout the trial as to all similar testimony. For purposes of this case we are treating the objection as not being waived.

large number of documents made up of very numerous detailed statements—as, the net balance resulting from a year's vouchers of a treasurer or a year's accounts in a bank-ledger—it is obvious that it would often be practically out of the question to apply the present principle by requiring the production of the entire mass of documents and entries to be perused by the jury or read aloud to them. The convenience of trials demands that other evidence be allowed to be offered, in the shape of the testimony of a competent witness who has perused the entire mass and will state summarily the net result. Such a practice is well established to be proper. "Most Courts require, as a condition, that the mass thus summarily testified to shall, if the occasion seems to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available:"

█ In conjunction with the above principle, however, it is here important to bear in mind that a trial judge, in ruling on objection to evidence, should be fully apprised of the grounds of objection and given an opportunity to so direct the proceeding as to insure a fair trial to all.

This being a non-jury case, had defense counsel desired the original vouchers for purposes of cross-examination, or for purposes of verification, he should have so indicated to the Court. The Court could then have recessed the trial and allowed counsel the opportunity of inspection of this great mass of documents which had required about six weeks of time of the plaintiff's auditor.[4]

In the instant case it appears from the record that prior to the trial of the case, and on February 6, 1953, plaintiff wrote a letter to defendant setting forth the method by which plaintiff had calculated this shortage. See Record, p. 59 and see plaintiff's Exhibit 9. Defense counsel was therefore, on notice of the nature of plaintiff's contemplated proof.

It may be inferred that this huge mass of vouchers had already been inspected by defendant prior to trial, or that defendant was willing to take the summaries of the same prepared by plaintiff's auditor. At any rate, it was never brought to the attention of the trial judge that the right to inspect these documents had been denied, or was being denied, to defense counsel.[5]

█ (5) Appellant contends that provisions of the bond as to furnishing proof of loss were not complied with by insured. In his brief counsel for appellant does not contend that the proofs of loss were not timely, but only that they were insufficient. It appears that almost immediately after discovery of this loss the insured furnished to the insurer among other things, affidavit by Daniels and Lister as to their thefts, affidavit of the detective operative Glenn, a letter explaining the manner in which the amount of the loss was computed and giving the result of the audit. Insured notified insurer that the former "would welcome any inspection" of its records, offered to furnish any documents or figures desired. Proofs of loss were accepted by insurer without ob-

---

**4.** As to duty of counsel to make objections to the testimony specific, see Jeffreys v. O'Neal, 4 Cir., 64 F.2d 284(9); and full discussion of Judge Soper on page 288; Scritchfield v. Kennedy, 10 Cir., 103 F.2d 467(7); Southern Kansas Stage Lines v. Gibson, 10 Cir., 87 F.2d 23(6); Also Fed. Dig., Vol. 4, p. 304.

**5.** What has been said above relates primarily to vouchers in possession of plaintiff. As to summary of records of the Compress Company, the above also applies. However, it seems that records of the Compress Company were merely inspected for purposes of assisting in making computation from plaintiff's records.

jection, it caused its investigators to go fully into the claim. It denied liability on the merits of the claim and not upon the ground of insufficiency of proofs of loss furnished to the company. No principle of law could be better established than that under such circumstances, even if proof of loss would otherwise be insufficient, the insurer waived such requirement of the bond. Among cases cited by appellee is included: Federal Surety Co. v. Smith, Tex. Com.App., 41 S.W.2d 210; Hanover Fire Ins. Co. v. Glenn, Tex.Civ.App., 153 S.W.2d 993 at page 997; Sanders v. Aetna Life Ins. Co., 146 Tex. 169, 205 S.W.2d 43, 44, 173 A.L.R. 968; Sun Mutual Ins. Co. v. Mattingly, 77 Tex. 162, 13 S.W. 1016; Fidelity & Deposit Co. of Maryland v. Peoples Bank of Sanborn, 4 Cir., 72 F.2d 932, 939, certiorari denied 293 U.S. 627, 55 S.Ct. 348, 79 L.Ed. 714.

The evidence was sufficient to support the judgment and no error of law appears requiring a reversal.

Judgment affirmed.