**GLENS FALLS INDEMNITY COMPANY, Appellant,**

v.

**NATIONAL FLOOR & SUPPLY COMPANY, Appellee.**

**No. 16010.**

United States Court of Appeals Fifth Circuit.

Nov. 27, 1956.

Rehearing Denied Jan. 8, 1957.

Richard F. Ralph, Walter Humkey, James O. Davis, Jr., Miami, Fla., Fowler, White, Gillen, Yancey & Humkey, Miami, Fla., of counsel, for appellant.

Stephen R. Magyar, Orlando, Fla., for appellee.

Before RIVES, TUTTLE and JONES, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a final judgment for appellees on an employee's position bond in which, in its brief, appellant says: "Appellant agreed to indemnify the appellee for any loss of money or other property which the appellee sustained through any fraudulent or dishonest act committed by an employee of appellee." It is not clear whether the recovery here was based on loss of "money or other property" or an "inventory shortage." The policy provisions as to

inventory shortage require "conclusive" proof of its having been caused by fraud or dishonesty.[1] However, appellant treats the matter in its argument before us as requiring only the usual standards of proof, and makes no point of the words "conclusively prove." We will treat it the same way, and thus will not consider the quantum of proof that might be required if the parties were here presenting a case in which the plaintiff was required to satisfy the requirement that it prove *conclusively* that the loss was caused by the fraud or dishonesty of the employee.[2] We need not construe the contract more strictly in favor of the bonding company than it does itself.

■ Assuming, therefore, that the only question is whether the acts of appellee's employee Williams, during the term of the bond, were such as would sustain the court's finding of fraud or dishonesty, we must look to the evidence as to these facts.[3] Appellant has not adequately raised for our consideration any other issue.[4]

■ No Florida cases are cited to show exactly what acts by an employee may permit a finding by court or jury of fraud or dishonesty. However, we may accept as a correct statement of the law the language of the decision quoted by appellant.

"For an act to be 'dishonest' within the meaning of a fidelity suretyship bond, there must exist the element of moral turpitude or want of integrity." Commercial Banking Corp. v. Indemnity Insurance Co. of

1. The relevant provision of the contract is:

"In consideration of an agreed premium the Glens Falls Indemnity Company, a corporation of the State of New York, with its Home Office in the City of Glens Falls, N. Y., hereinafter called Underwriter, hereby agrees to indemnify

National Floor and Supply Company

of 1807 N. Orange Ave., Orlando, Florida, hereinafter called Insured, against any loss of money or other property, real or personal (including that part of any inventory shortage which the Insured shall conclusively prove has been caused by the fraud or dishonesty of any Employee or Employees) belonging to the Insured, or in which the Insured has a pecuniary interest, or for which the Insured is legally liable, or held by the Insured in any capacity whether the Insured is legally liable therefor or not, which the Insured shall sustain and discover as provided in Section 2, the amount of indemnity on each of such Employees being

Ten Thousand and No/100 . . . Dollars ($10,000.00)

through any fraudulent or dishonest act or acts committed by any one or more of the Employees as defined in Section 3, acting alone or in collusion with others, during the term of this bond as defined in Section 1."

2. For cases decided by this Court dealing with the effect of such a provision see New Amsterdam Cas. Co. v. W. D. Felder & Co., 5 Cir., 214 F.2d 825; Cobb

v. American Bonding Co. of Baltimore, 5 Cir., 118 F.2d 643. In the latter case the Court pretermitted the question. See also Morrow Retail Stores v. Hartford Accident & Indemnity Co., D.C., 111 F.Supp. 772.

3. Although appellant's counsel in oral argument questioned the sufficiency of proof as to the actual inventory shortage and as to the time when any proven shortage occurred, neither of these matters was mentioned in appellant's brief nor in the statement of points to be relied on. In its statement of points on which it claims the trial court erred it did not assert that there was not sufficient evidence to sustain the court's verdict as to any matter except the alleged fraud or dishonesty. The statement as to all other facts merely complained that the judgment "was against the manifest weight of the evidence."

4. Rule 24, subd. 2(b) of this Court, 28 U.S.C.A., provides that the brief of appellant shall contain "A specification of the errors relied upon, which shall set out separately and particularly each error asserted and intended to be urged. Errors not specified according to this rule will be disregarded; but the court, at its option, may notice a plain error not specified." The failure to put appellee on notice that it would argue these additional points would prevent this from being a case in which this Court should make an exception to the rule. Moreover, no plain error appears.

North America, D.C., 1 F.R.D. 380, 382.

This Court has approved the charge of a trial court to the effect that the words "personal dishonesty" in such a bond "might include any acts which evinced a want of integrity and an intentional breach of trust." United States Fidelity & Guaranty Co. v. Bank of Thorsby, 5 Cir., 46 F.2d 950, 951.

The proof submitted to the trial court here amply supported the court's findings of facts.[5] It cannot be doubted, it seems to us, that the course of conduct here found by the court to exist amounted to "acts [evincing] a want of integrity and an intentional breach of trust," the standard set in the Bank of Thorsby case, supra, or that they contained the "elements of moral turpitude," which appellant says is the standard. A willful and flagrant violation of a fiduciary trust to the detriment of the one who imposes the trust is an act of grave moral turpitude in the sense used by the court here.

The judgment is

Affirmed.

5. "(1) The Court by requesting admissions from the Plaintiff and the Defendant, Glens Falls Indemnity Co., reduced the issue in this cause to proof of the actual loss caused by the fraudulent and dishonest acts of the employee of the Plaintiff and the compliance by the Plaintiff of notice of loss to the Defendant, Glens Falls Indemnity Co., as per the terms of the Fidelity Bond.

"(2) The Plaintiff in behalf of its cause presented the testimony of six witnesses and its original records and books of account, and the Defendant, Glens Falls Indemnity Co., offered the testimony of one expert witness.

"(3) The 3rd party Defendant, George R. Williams, was employed by the Plaintiff in a fiduciary capacity as a warehouse manager and as such was, the only person entrusted with the keys to the warehouse, that tangible merchandise being the property of the Plaintiff was entrusted into the possession of the third party Defendant by virtue of his employment for resale with the understanding that the merchandise would be accounted for and the money proceeds would be delivered into the hands of the Plaintiff.

"(4) That no fire causing any loss or any robbery, burglary, or theft causing any loss had occurred at the warehouse of the Plaintiff.

"(5) That beginning from about the middle of December 1951 to the termination of his employment on April 1, 1952 the third party Defendant and employee, George R. Williams, displayed a want of such reasonable diligence and skill as the duties of his position necessitated, a want of integrity, a breach of the trust imposed on him, and a reckless, willful and wanton disregard for the interest of his employer which subjected the Plaintiff, his employer, to a likelihood of loss in that:

"(a) the 3rd party Defendant Employee allowed himself to become intoxicated during business hours,

"(b) the 3rd party Defendant Employee would absent himself during business hours from the warehouse without authority and for his own personal uses for periods of time leaving the premises unlocked and would leave the warehouse in charge of a stranger who was not an employee of the Plaintiff,

"(c) the 3rd party Defendant Employee did not make and submit his reports with accuracy and promptness,

"(d) the 3rd party Defendant Employee used the funds of the Plaintiff for his own personal use such as purchasing airplane tickets to Cuba,

"(e) the 3rd party Defendant Employee sent a stranger to the warehouse after business hours with the keys to get money to enable him to stay in a poker game,

"(f) the 3rd party Defendant Employee made sales for cash and did not make out the necessary invoice or sales records, and also did not record sales and report them to the home office of the Plaintiff,

"(g) the 3rd party Defendant Employee set up a stranger in the flooring business and delivered merchandise to him from the warehouse without receiving payment therefor and without establishing credit background and without making out sales invoices and by admitting that this practice was unauthorized.

"(6) The third party Defendant Employee having no other employment except that with the Plaintiff spent money for drinking parties far in excess of his salary.

"(7) The Plaintiff suffered a proven inventory shortage at its Miami warehouse

between December 1951 and April 1952 in the amount of $6,839.71.

"(8) The 3rd party Defendant Employee made no effort to explain this shortage and failed to account for all the merchandise and moneys belonging to the Plaintiff which came into his possession through his employment with the Plaintiff.

"(9) The 3rd party Defendant Employee signed a written statement admitting a shortage and accepting responsibility therefor.

"(10) The Plaintiff gave notice of the loss to, and filed proof of loss with the Defendant, Glen Falls Indemnity Co., and filed suit within the time period set out by the Fidelity Bond."