**SAVANNAH WHOLESALE COMPANY, Appellant,**

v.

**CONTINENTAL CASUALTY COMPANY, Appellee.**

**No. 18180.**

United States Court of Appeals Fifth Circuit.

June 15, 1960.

Rehearing Denied Aug. 30, 1960.

Jones, Circuit Judge, dissented.

Emanuel Lewis, Lewis, Wylly & Javetz, Savannah, Ga., for appellant.

Kirk M. McAlpin, Bouhan, Lawrence, Williams, Levy & McAlpin, Savannah, Ga., for appellee.

Before RIVES, Chief Judge, and JONES and WISDOM, Circuit Judges.

RIVES, Chief Judge.

This is an appeal from a judgment entered upon defendant's motion for a directed verdict at the close of plaintiff's case. The appellant is a wholesale dry goods concern; the appellee an insurance company. The action was brought upon a contract of insurance between the parties, under the terms of which appellant's business was protected against any loss resulting from dishonesty on the part of its employees. The pertinent provisions

of that contract are set forth in the margin.[1]

The motion for a directed verdict was predicated upon two grounds: first, that the appellant had failed to show that it had, in fact, sustained a loss; and, secondly, that, assuming that a loss had been sustained, the appellant had failed to show that such loss was attributable to employee dishonesty. Although separate and alternative in theory, these two grounds tend to merge under the circumstances of this case. We will therefore discuss the evidence adduced on both of these points together. Our task is to determine whether that evidence was sufficient to entitle the appellant to submission of its case to the jury.

The appellant's contention is that, during the first nine months of 1956, it suffered losses in excess of $10,000[2] as a result of dishonesty on the part of some one or more of its employees. The primary evidence upon which this contention is based is that the gross profit percentage for that period was significantly lower than it should have been in view of the markup it was placing upon its merchandise. The appellant's business records, including physical inventory counts taken at the beginning and the end of the period in question indicated a gross profit of approximately 12%. The appellant's witnesses, on the other hand, testified that it had been the policy of the business at that time to place a 20% markup on all of its merchandise. In addition, there was testimony that the business had realized gross profits of 16–18% in the period immediately preceding the nine months in question and in the period immediately following the discovery of the shortage in profits.

When this sharp decrease was brought to appellant's attention by its accountant, a thorough investigation was made in an attempt to determine the cause for such a serious business reversal. This investigation included a study of selling practices, billing methods, the bookkeeping system, and other similar aspects of appellant's operations. The result of this investigation was that each of these possibilities was, at least to the satisfaction of appellant's managers, ruled out as the cause of the discrepancy.

During the course of this investigation, appellant's managers discovered that a roof hatch of its building was open. This hatch, which had previously been latched from the inside, led from the storeroom where appellant's merchandise was kept through a small attic and then out onto the roof of appellant's building. It is uncontroverted in the evidence that appellant's building was so situated that merchandise could have been easily removed through this hatch.[3]

1. "Employee Dishonesty Coverage—Form A.
"I. Through any fraudulent or dishonest act or acts, committed anywhere by any of the Employees acting alone or in collusion with others, including loss of Money and Securities and other property through any such act or acts of any of the Employees, and including that part of any inventory shortage which the Assured shall conclusively prove to have been caused by the fraud or dishonesty of any of the Employees; provided that the Company's aggregate liability as to all Employees shall not exceed the Limit of Liability applicable to this Insuring Agreement I, subject, however, to the provisions of Section 9.
"Loss Caused by Unidentifiable Employees.
"If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Assured shall be unable to designate the specific Employee or Employees causing such loss, the Assured shall nevertheless have the benefit of this Insuring Agreement I, provided that the evidence submitted reasonably (in case of inventory shortage, conclusively) establishes that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, and provided further that the aggregate liability of the Company for any such loss shall not exceed the Limit of Liability applicable to this Insuring Agreement I."

2. The applicable policy limit.

3. Appellant's building was adjoined by a taller building which opened out onto appellant's roof. This adjoining building appears to have been an almost deserted tenement, through which it would

The discovery of the open hatch prompted appellant's managers to call in the local police, who thereupon conducted an investigation. As a result of this investigation, two small boxes [4] were discovered in the attic near the open hatch. In addition, the police made an examination of the premises on the basis of which they concluded that the hatch had not been opened from the outside. Finally, they investigated certain of appellant's employees, but with no success. The police then closed their investigation and, as far as they are concerned the mystery remains unsolved.

The appellant's position is that, on the basis of the foregoing evidence, the jury could quite properly have found that its low gross profit percentage was caused by the fact that merchandise had been taken out of its building through the open roof hatch, by or with the aid of, one or more of its employees. The appellee, on the other hand, contends that such a conclusion would be improper in that it could rest only upon conjecture. Upon examination of these opposing contentions, we think the appellant must prevail.

 It is well settled that the policy here in question requires only that the insured prove his claim by a preponderance of the evidence.[5] Indeed, the appellee makes no attempt to controvert this settled principle of law, but contends rather that the evidence in this case does not call for its application. We do. not

agree. The appellant has offered evidence to exclude every reasonable hypothesis other than that of employee dishonesty. Moreover, it has offered some directly affirmative evidence to support the hypothesis of such dishonesty.[6] If the jury chose to give full credit to the testimony of all of appellant's witnesses, it could quite reasonably conclude that the gross profit discrepancy was not due to any sort of clerical error or defect in the conduct of the business. The inference of theft would then be a permissible one. As between the possibilities of theft by an outsider, which would not be covered by the policy, and theft by an employee, which would be covered, the evidence that the hatch had been opened from the inside would justify a reasonable choice of the latter.

The cause is therefore Reversed and Remanded for a new trial.[7]

JONES, Circuit Judge (dissenting).

It takes, for me, a good deal of doing, to see enough evidence to permit the drawing of an inference that the appellant had sustained an inventory loss. If this difficulty be surmounted, then it appears to the majority that because a roof hatch was unlocked the inference can be drawn that somebody from the inside carried the goods outside. To me it seems equally plausible that somebody from the outside went in for the goods. None of the elements of speculation and conjecture are taken from the case so as

have been quite possible for someone to pass regularly without being noticed.

4. These boxes could have contained merchandise, but appellant's managers were unable positively to identify them.

5. See New Amsterdam Casualty Co. v. W. D. Felder, 5 Cir., 1954, 214 F.2d 825, 827; Glen Falls Indemnity Co. v. National Floor & Supply Co., 5 Cir., 1956, 239 F.2d 412, 413.

6. The case would appear to be closely analogous to the case of Morrow Retail Stores, Inc. v. Hartford Accident & Indemnity Co., D.C.Idaho, 1953, 111 F. Supp. 772. That decision, which was cited favorably by this Court in the Felder case and in the National Floor & Supply

Co. case, supra, note 5, held that a question of fact for the jury was made out on evidence equally circumstantial in character to that presented here. The appellee's attempt to distinguish that case on the ground that the insured there maintained a perpetual inventory of his merchandise is not well taken. It is for the jury to determine whether the appellant's bookkeeping system was reliable.

7. The necessity for a new trial would have been obviated and the case finally disposed of in favor of either the plaintiff or the defendant if the district court had reserved its decision on motion for directed verdict as permitted by Rule 50 (b), Federal Rules of Civil Procedure, 28 U.S.C.A.

to make a jury question, as I view it, by saying that the hatch cover had been opened from the inside. I do not believe it ought to be said that it was error for the district court to direct a verdict for the insurance company. I would affirm its judgment.