ERVIN, Chief Justice
(dissenting).
Petitioner, the City of Miami, is authorized by law to intervene in the instant utility rate proceedings conducted by Respondent, Florida Public Service Commission, “to make a proper and sufficient inquiry” into the justness and reasonableness of existing and proposed rates and charges of Florida Power and Light Company for the purpose of protecting the interests and welfare of the residents of the City of Miami.
The Commission had determined that an investigation of such rates and charges of the electric utility should be made; that the matter should proceed to a public hearing at which time the Company should provide certain schedules and exhibits pertaining to its rates and charges required by the Commission, the same to be based on the twelve-month period ending May 31, 1968, and justify its (the Company’s) present earnings and its rates and charges as fair and reasonable. All interested parties were to be given an opportunity to be heard on the issues involved.
Prior to the public hearing, Petitioner-intervenor City filed a motion with the Commission for the production by the Company and the inspection by the City of certain books and records of the Company underlying certain exhibits proposed to be introduced in evidence at the hearing. The Commission denied said motion in its order No. 4450.
Subsequently, at the hearing the Company introduced into evidence certain exhibits, one of which, Exhibit 7, included summary data reflecting the Company’s revenues and expenses during the year ending May 31, 1968.
Supplementing such summary data was testimony of a Company witness, a Mr. Millsaps, that the Company’s earnings during the test year ending May 31, 1968, were at the rate of 6.65 per cent, but cost of capital was at the rate of 7.61 per cent and additional revenue would be necessary to bring the earnings up to 7.61 per cent.
Thereupon, in view of the Company’s request for a rate increase, the City filed a second motion before the Commission seeking the production, for the City’s examination, of all pertinent books and records of original entry underlying the two summary items (revenues and expenses of the Company) in Exhibit 7 so that verification could be made and in order to prepare for cross-examination of witnesses of the Company, and for the presentation of appropriate rebuttal testimony as might be necessary.
This motion was denied by the Commission, which said:
“The Commission finds that the mere designation of an exhibit number by the movant does not satisfy the requirements for designation as was fully explained in our previous order herein set forth in detail and which is re-adopted as a portion of this order. The remaining grounds relied on by the City in support of this motion, i.e., to prepare the City for cross-examination of company witnesses and prepare for the presentation of rebuttal testimony were fully considered and disposed of in Order No. 4450, and are again found to be insufficient grounds for the granting of the Motion. * * .*»
It is this order (No. 4487) that the City has petitioned us to review by writ of certiorari.
In denying the motion of the City for inspection of the underlying records, books *221 and accounts to Exhibit 7, the Commission referred to its denial order No. 4450 of the prehearing first motion of the City which stated that the City had failed to comply with Rule 1.350 of the Florida Rules of Civil Procedure, 30 F.S.A., which is similar to Rule 34 of the Federal Rules. By reference it assigned these same reasons for its second denial order, No. 4487.
Rule 1.350 provides that a court upon a showing of good cause by a movant may order “any party to produce and permit the inspection and copying or photographing by or on behalf of the moving party of any designated documents, papers, books, accounts * * * which constitute evidence relating to any of the matters within the scope of the examination permitted by Rule 1.280(b) * * *. The order shall specify the time, place and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just.”
The scope of examination prescribed by Rule 1.280(b) extends to an examination of the deponent “regarding any matter, not privileged, which is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things * *
The City contends that where, as in this proceeding, a summary of certain items taken from underlying books and records and accounts is offered into evidence, opposing interested parties should have reasonable access to examine such books and records and accounts; that there is no way for the City to ascertain if the summary data contained in the Company’s Exhibit 7 is accurate except by inspection of the books and records and accounts; that only by such inspection can it be determined by the City if the summary data is appropriate under the law, based on actual facts and accords with applicable law allowing reasonable expenses, costs and income for the Company’s “distribution of electricity” to the public.
The City argues the best evidence is the underlying books, records and accounts, and that production of the same as requested by the City is necessary to meet the requirements of “competent substantial evidence,” citing 32 C.J.S. Evidence § 776, page 701. However, it concedes such best evidence is not required where summary data is allowed in lieu of voluminous documents for convenience and the parties have an opportunity to examine original documents and cross-examine on disputed points. Chicago Board of Trade v. United States, 9 P.U.R.3d 475, 223 F.2d 348; Re Lone Star Gas Company, P.U.R. 1933 C 1. See also, Wigmore, 3d Ed., Vol. IV, p. 307 Id., pp. 434-435. Michigan Bell Telephone Co. v. P.U.C., P.U.R.1931E 222, pp. 224-225.
In Re Pacific Telephone and Telegraph Co., P.U.R.1928D313, the California Public Utilities Commission ruled:
“In view of the importance of this proceeding and the vast amount of work involved in properly checking and examining the supporting data upon which the applicant’s exhibits are based, and to the end that the facts may be placed before us in such form that a final determination may be properly grounded, it is our opinion that these responsible parties [several California municipalities] should be accorded every reasonable opportunity to make an independent check and investigation of all such supporting data. In passing on this motion we are acting in our judicial or quasi-judicial capacity, and it would seem to follow that we must look to the practices of the courts to discover the solution to this problem.
“Before this Commission, as before courts of law and equity, witnesses are allowed to appear and present summations of voluminous accounts and records, and although these accounts and records themselves constitute the best evidence of *222 the facts contained therein their summation is permitted, since otherwise hearings would have no end. The right to present evidence in this form is, however, subject to certain conditions and limitations. As declared in Wigmore on Evidence :
“ ‘Most courts require, as a condition, that the mass thus summarily testified to shall, if the books seem to require it, be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available.’ (2d Ed. (§ 1230, Vol. 2, p. 286).)
“ ‘But in such cases, unless there is some legal excuse for not producing the books and account from which the witness has obtained the results testified to, they must be produced, if required by the opposing party, for examination, or to enable him to cross-examine the witness.’ ”
To the same effect, see Re Wisconsin Telephone Co., P.U.R.1931E, 101, 102.
The City contends it properly identified the underlying books and records by referring in its motion to Exhibit 7; that summary information from such books and records embrace two items only: (a) “Operating expenses [of the Company in the amount of] $126,686,997,” and (b) “Income tax [of the Company]. Normal $37,-917,240,” which are reflected in Exhibit 7 for the year ending May 31, 1968.
The City contends that in meeting the requirement of good cause, it indicated that the inspection of these records was essential to the rate hearing case because the reasonableness and fairness of the Company’s rates could only be conclusively determined by examining the relevant best evidence data relating to the rate base of the Company, and that it is clear the two items reflected by Exhibit 7, viz., the Company’s revenues and expenses for the test year period, were alleged by it to constitute important elements of the rate base of the Company.
The City contends that unless it is allowed to examine the underlying records to this principal exhibit of the Company reflecting data concerning its rate base during the test period, its participation as an intervenor in the hearing in discharging its lawful duty in the premises would be a meaningless gesture, since it would have no way of knowing with certainty whether the best evidence of the rate base items of the Company had in fact been accurately reflected or whether all the items reflected in the summary were legitimate and in accord with the requirements of law applicable to the rate making process.
There is a wealth of authority, both general and specific, supporting the City’s motion.
It is obvious the purpose of the City’s motion for said inspection was to determine the accuracy and propriety of the summary items as contained in Exhibit 7 and for the purpose of preparing for cross-examination and offering rebuttal testimony.
Our Court in construing a discovery rule similar to the ones quoted above, said in Hollywood Beach Hotel & Golf Club, Inc., v. Gilliland, 140 Fla. 24, 191 So. 30:
“We construe this rule to entitle any party to a cause the privilege of examining ‘books, records and papers’ of the opposite party containing or believed to contain certain evidence pertinent to the cause of the movant and if found to be so it may be used at the trial. * * * ”
With reference to Federal Discovery Rule 34, which is very similar to our Florida rules, a U.S. District Court in the case of Scuderi v. Boston Insurance Company (1964), 34 F.R.D. 463, commented:
“The test of relevance for the purposes of discovery is a liberal one. It requires only a reasonable probability of materiality and is not as strict as the standard of relevance at trial.
*223 ‡ * * * *
“Particularity of .designation [of the books and records sought to be inspected] however, like so many other matters in life and law is a matter of degree, dependent upon a pragmatic consideration of the circumstances in each case. Necessarily the test must be a relative one, turning on the degree of knowledge that a movant has as to the documents he requests.
“Good cause means that there must be ‘set circumstance in (the) particular case which make it esseritial to the preparation of (the) case and in the interest of justice that the statements be produced for * * * inspection or copying.’ ”
In the case of New York Edison Co. v. City of New York, 133 App.Div. 728, 118 N.Y.S. 238, the City of New York was sued to recover the value of electricity furnished it for lighting service in the year 1903. The City moved the Court for an order to inspect all books, documents and records of the plaintiff electric company. The N. Y. Appellate Court in reviewing the lower court’s denial of the City’s motion, noted the plaintiff’s business is the manufacture and sale of electricity to thousands of customers, adding
“ * * * and the reasonable cost thereof can only be determined by showing the amount of capital invested, the actual cost to manufacture and deliver including taxes. * * * This will necessitate an examination of its entire business, and for that reason the defendant [City], in order to prepare itself for trial, should have an inspection of all the books, papers and documents of the plaintiff. * * * ’’
In the case of Federal Mining and Smelting Co. v. Public Utilities Commission, 26 Idaho 39, 143 P. 1173-1174, L.R.A.1917F, 1195, the Appellate Court there said:
“The purpose of said proceeding was to litigate the reasonableness of rates for power furnished to the plaintiff by the Washington Power Company.”
After answer of the Washington Power Company was filed in the case, the complainant moved for production and inspection of all books and records of the power company. The appellate court said:
“ * * * the Commission must require the Water Power Company to produce for examination by the Federal Mining Company [plaintiff] all books, papers, and accounts that would throw any light upon the question of reasonable rates to be charged for electrical energy or power furnished to the Federal Mining Company by the Water Power Company # >{t v
In New Amsterdam Cas. Co. v. W. D. Felder Co., Inc., 214 F.2d 825, the Federal District Court quoted with approval from Wigmore on Evidence, Vol. 4, Sec. 1230, which is to the effect that where a mass of documents are pertinent to an evidentiary determination it is often out of the question to produce them at trial. For convenience summarization thereof is allowed by a competent witness, but as condition to this practice, the mass of documents are usually made accessible to the opposing party in order that the correctness of the evidence may be tested by inspection if desired.
In Brigham v. Zaiss, 48 App.Div. 144, 62 N.Y.S. 706, the court there said:
“Manifestly, the plaintiff has no way of ascertaining what the net amount is, except from the defendants themselves, or from an inspection of their books of account. * * * No good reason can be suggested why they should not furnish them to plaintiff * * * under suitable conditions * * * to inspect their books * * * in so far as they contain entries relating to, or in any way connected with, the subject-matter of the action.”
In a recent case, In the Matter of New York City Housing Authority et al. v. Public Service Commission of the State of New York et al. (1966), 17 N.Y.2d 246, 270 *224 N.Y.S.2d 417, 217 N.E.2d 140, the court held:
“The commission was unduly restrictive, however, in refusing the City of New York, which was a party to the proceeding in the interest of its citizens as a matter of right * * * access to factual material which played a part in the rate decision.
“These parties were adversaries to the company before the commission and the right of plenary inquiry ought to have been afforded them into the facts on which the proposed increase in tariffs was to be based.”
In Scott v. Caldwell, 160 Fla. 861, 37 So.2d 85, we alluded to and approved the rule that an auditor or expert accountant may examine and summarize a large number of entries and books of account and as a witness give summarized statements at trials and hearing of what the books examined show. However, we added this condition, “provided the books themselves are accessible to the court and parties.”
A study of facts and issues of this case in the light of applicable authorities leads to the conclusion that the Commission erred in denying the City’s second motion relative production and inspection of the books and records and accounts of the Company underlying Exhibit 7.
I do not believe our views on a motion of the City of Miami for production of certain books and records in the rate proceeding involved in City of Miami v. Florida Public Service Commission, Fla., 208 So.2d 249, are necessarily controlling in this instance. Our review there related to different circumstances in a completed rate hearing where the “end result” doctrine was applied, which is not the situation here.
The motion should be granted, coupled with reasonable conditions and safeguards as to the manner of the City’s inspection, since that is the only way by which the City can be afforded a realistic opportunity to test the correctness of the summarized data submitted by the Company. Just how the City could otherwise identify the pertinent underlying books and records and accounts desired for inspection than by referring to Exhibit 7 is not understandable, since only the Company has knowledge of these books, etc., and has them in its possession.
The public interest and good public policy will be served if full disclosure of the particular data requested is made available to the City by the Company. This could clear the atmosphere and perhaps remove the suspicion that the Company is improperly withholding from the City’s representatives pertinent information relevant in the rate-making process or is covering up unjustified expenditures that should not be passed on to consumers.
As was stated by us in City of Miami v. Florida Public Service Commission, supra, our judicial duty and concern in cases of this kind is to determine whether utility rates are reasonable and that the public is not being excessively charged and whether the public utility is receiving fair and reasonable returns on its investments. Determinations in such cases should be made in accordance with due process of law and in keeping with recognized rules of trial or administrative hearing procedure and practice.
In such cases, neither the Commission nor the courts should countenance any harassment of the public utility or the making of it a “whipping boy” for political or other extraneous purposes. In this rate hearing reasonable inspection of the books and records of the utility by the City, a duly authorized intervenor with lawful right to participate as an adversary party, is justifiable and accords with the great weight of authority and traditional evidentiary practices, and constitutes no harassment or undue obtrusion into the private area of the utility’s management.
The claimed fear that allowance of the City’s motion will establish a precedent disruptive of the orderly business management of the utility by permitting a great number *225 of irresponsible and unauthorized parties to intrude under the guise of inspection is a chimerical supposition without basis in reason. The only persons or entities authorized to inspect are those parties that have a real interest in a rate determination and are authorized to intervene as such. Moreover, it lies within the power and duty of the Commission to insure that any inspection be reasonably made under conditions that will not permit a great rush of curiosity seekers to disrupt the utility’s orderly business management. For example, the Commission itself could make the inspection for a particular rate hearing, with an authorized representative named by intervenors to be present during the inspection, and make available to all interested parties the information obtained in the inspection.
It is true Rule 310-2.88 provides a means for the reasonable inspection of books, records and accounts of public utilities in rate hearings, but this case demonstrates the rule has not been given reasonable application. The rule exists, but lies dormant because an interested participant — the City in this case — is not permitted to invoke it; and to all intents it is meaningless discovery machinery unavailable for any practical utilization.
The Commission’s order (No. 4487) should be reversed with directions that an order granting the City’s motion with appropriate safeguards and conditions be entered.
DREW and THORNAL, JJ., concur.