ERNEST H. MILLER, RESPONDENT, v. NEW AMSTERDAM CASUALTY COMPANY, APPELLANT.

Submitted March 22, 1920—Decided June 14, 1920.

1. Where an insurance policy contained a clause: "The assured upon the discovery of any loss of the insured property on said premises, shall give, at the expense of the company, immediate notice thereof, by telegraph to the company at its executive office in New York City or Baltimore, Maryland, or to the nearest agent of the company . * * *," notice to an agent of the company in the immediate vicinity of the premises the morning after the loss was a sufficient compliance with the terms of the policy.

2. A greater or less probability, leading on the whole to a satisfactory conclusion, is all that can be reasonably required to establish controverted facts.

3. The rigid rule applicable to criminal causes, based on circumstantial evidence, which requires as a basis for conviction the elimination of every other reasonable hypothesis which could afford a rational explanation for the commission of the crime is not applicable to civil causes, where the preponderance of the aggregate probabilities juridically termed "the weight of evidence" furnishes the legal standard of proof.

On appeal from the Supreme Court.

For the respondent, *John A. Bernhard.*

For the appellant, *Edwards & Smith.*

The opinion of the court was delivered by

MINTURN, J. The plaintiff, a resident of the city of Newark, took a policy of insurance against loss by theft, from the defendant company, through its local agent, which policy contained the following clause of indemnity : "For direct loss by burglary, theft or larceny of any other property of the assured described in said schedule and stated therein to be insured hereunder, occasioned by its felonious abstraction from the interior of the house, building, apartments or rooms actually occupied by the assured."

Thereafter a chain and necklace, which his wife was accustomed to wear, was found to be missing from the apartment-house, and an assiduous search through the rooms and closets by husband and wife failed to locate it. The loss was detected on the night of February 7th and was reported to the agent of defendant company, located in the immediate neighborhood the next morning. The main offices of the company were located in New York City and in Baltimore, and the policy provided that "the assured upon the discovery of any loss of the insured property on said premises, shall give at the expense of the company immediate notice thereof, by telegraph to the company at its executive office in New York City or Baltimore, Maryland, or to the nearest agent of the company,

and shall also give immediate notice thereof to the public police authorities having jurisdiction." That proper notice was given to the police is not disputed, but it is insisted that notice should have been given by telegraph to the company. The agent at Newark was practically the defendant's *alter ego* at that city, and was constituted, it will be observed, the company's representative for the purpose of receiving such notice, by the provisions of the policy. Therefore, the insistence that proper notice as required by the policy was not sent to the insurer cannot be reasonably maintained, since the plaintiff complied with the optional procedure expressly provided in the policy.

The main insistence, however, is, that there was no proper proof of the loss, and that a nonsuit or a direction should have been granted by the trial court, whereas judgment for the plaintiff was ordered, and that judgment was affirmed by the Supreme Court.

Numerous cases from other jurisdictions are cited by the appellant in an effort to sustain the proposition that the burden of proving the fact of theft rests upon the plaintiff, as a condition precedent to defendant's liability upon the policy. This contention may be conceded as a fundamental rule of civil procedure, and yet the evidential facts may be of such a circumstantial nature as to raise a reasonable probability that the loss took place in the manner claimed. Proof of that presumptive character has been defined by Mr. Best as "a mere preponderance of probabilities, and therefore a sufficient basis of decision." ·1 *Best Ev.* 135.

Blackstone declares that when a fact cannot itself be demonstrated, that which comes *nearest* to proof of it, is proof of the circumstances necessarily or usually attending it; this proof creates a presumption which is relied upon till the contrary is proved. 3 *Bl. Com.* 371.

In other words, the creation of the presumption shifts the *onus* to the party who contends otherwise. Thus, says Mr. Best, referring to such presumptions: "They not only form important links in a chain of evidence as to frequently render complete a body of proof which would otherwise be imperfect;

but the concurrence of a large number of them may (each contributing its individual share of probability) not only shifts the *onus probandi,* but amounts to proof of the most convincing kind." 2 *Best Ev.* 577.

Further commenting upon the subject, Prof. Greenleaf remarks: "They depend upon their own natural force and efficacy in generating belief or conviction in the mind, as derived from those connections which are shown by experience, irrespective of any legal relations. * * * These merely natural presumptions are derived wholly and directly from the circumstances of the particular case by means of the common experience of mankind, without the aid or control of any rules of law whatever." 1 *Greenl. Ev.* 44.

And, so, it has been declared that a greater or less probability leading on the whole to a satisfactory conclusion, is all they can be reasonably required to establish controverted facts. *Devine* v. *Dilano,* 272 *Ill.* 166; *Ann. Cas.* 1918 *A.*

We may add that it is this preponderance of the aggregate probabilities juridically termed "the weight of the evidence" which furnishes the legal standard of proof in civil causes, as contradistinguished from the rigid rule applicable in the trial of criminal causes, based on circumstantial evidence, which requires as a basis for conviction the elimination of every other reasonable hypothesis which could afford a rational explanation for the commission of the crime. *People* v. *Sexton,* 187 *N. Y.* 495; 13 *R. C. L.* 213, and cases.

The difficulty inherent in the contention of the defendant in the case at bar is that it substantially invokes the application of the rule peculiar to criminal procedure to the facts of the case, and ignores the applicability of the rule peculiar to the civil forum.

A *resumé* of the evidential facts in the case will evince this situation. The chain and locket were kept in a bag behind a picture in the wife's room, and the picture was standing on a shelf in front of a simulated window. The morning after the loss was discovered a servant, who had been in the plaintiff's employ for only two weeks, suddenly left the employment, stating, "I have got to leave; I can't give you any reason but

I have to leave." During her sojourn at the house, the servant, exercising that prerogative of facile familiarity and studied nonchalance peculiar to the average modern household servant, frequently entertained her friends during the absence of the employer, and those friends at times entered the apartment where the jewels were kept. After the loss was discovered, the plaintiff and his wife made a thorough search of the house, in their efforts to locate the missing jewels, but the search was fruitless. They then notified the police, who also endeavored to locate the jewels, but their search was equally fruitless.

The situation thus produced, evinced by a process of elimination, in an atmosphere permeated with criminal suspicion, points inductively to one rational conclusion, which the average mind draws intuitively by a process of reasoning akin to the inductive processes of the logician, and not dissimilar to the intuitive methods of mental and moral philosophy, which processes are recognized in jurisprudence as a sufficient basis for judicial determination, the distinct inquiry being, as Prof. Greenleaf observes, not whether it is possible that such testimony may be false, "but whether there is sufficient probability of its truth." 1 *Greenl.* 4.

We think, therefore, the facts thus adduced upon the principles of evidence to which we have adverted, present a basis from which a rational mind in the light of every-day experience (the credibility of the witnesses being conceded) might legitimately and logically infer that the jewels had been removed from the plaintiff's possession by theft.

Such was the inference deduced by the trial court, and again by the Supreme Court from this congeries of fact; and, under the rule applicable to such a situation, under our adjudications, this court recognizing a substantial basis of fact to support the judgment, will accord to it such a status of finality dispositive of the factual questions involved, as we would accord under like circumstances to the verdict of a jury upon a writ of error. *Lapat* v. *Erie Railroad,* 71 *N. J. L.* 377; *Defiance Fruit Co.* v. *Fox,* 76 *Id.* 482.

Finding no legal error in the record the judgment will be affirmed.

*For affirmance*—The Chief Justice, Trenchard, Bergen, Minturn, Kalisch, Black, White, Heppenheimer, Williams, Taylor, Gardner, Ackerson, JJ. 12.

*For reversal*—None.