59 N.J. Super. 118 (1960)
157 A.2d 331
REESE CADILLAC CORP., FORMERLY REESE BUICK CORP. AND/OR STATE TIRE CO., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
GLENS FALLS INSURANCE COMPANY, A NEW YORK CORPORATION, DEFENDANT APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1959.
Decided January 12, 1960.
*121 Before Judges PRICE, GAULKIN and FOLEY.
Mr. Roy D. Cummins argued the cause for defendant-appellant (Mr. Samuel P. Orlando, attorney).
*122 Mr. Richard J.S. Barlow, Jr., argued the cause for plaintiff-respondent (Messrs. Lenox, Giordano & Lenox, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
Defendant appeals from a judgment entered in the Law Division on a jury verdict. On December 3, 1952 the plaintiff purchased from defendant a comprehensive Dishonesty, Disappearance and Destruction Policy which contained the following relevant clauses:

"EMPLOYEE DISHONESTY COVERAGE  FORM B
1. Through any fraudulent or dishonest act or acts committed anywhere by any of the Employees acting alone or in collusion with others, including loss of Money and Securities and other property through any such act or acts of the Employees, and including that part of any inventory shortage which the Assured shall conclusively prove to have been caused by the fraud or dishonesty of any of the Employees, the amount of insurance on each of such Employees being the Limit of Liability applicable to this Insuring Agreement 1.

Loss Caused by Unidentifiable Employees
If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Assured shall be unable to designate the specific Employee or Employees causing such loss, the Assured shall nevertheless have the benefit of this Insuring Agreement 1, provided that the evidence submitted reasonably (in case of inventory shortage, conclusively) establishes that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, and provided further that the aggregate liability of the Company for any such loss shall not exceed the Limit of Liability applicable to this Insuring Agreement 1." (Emphasis added.)
In 1954, while this policy was in effect, the plaintiff for "merchandising purposes" created a tire department or division which it named "State Tire Company." The business of this division was conducted in a building a few blocks away from that in which the corporation's automobile sales business was operated. In the early part of 1955 the corporation was in the process of closing out the division because that operation had been unprofitable. At that time plaintiff's president, Frank Reese, was induced to continue the operation by one Chester A. Schultes, an employee who was in charge of it. In April 1955 an arrangement was made *123 between Reese and Schultes whereby the latter undertook the operation of the tire department for 40% of the profits. The supplier of tires was then the General Tire and Rubber Company. On Schultes' recommendation this connection was severed and the Seiberling Tire and Rubber Company became the supplier. When Schultes took over there were no tires in stock. Shortly after April 22, 1955, the date of the first Seiberling invoice, the tire department actively resumed business.
Schultes' duties were those of a manager; he ordered tires, made out invoices, made entries in the daily cash sheets which he took to the corporation's accounting department at the end of each month; he turned in cash daily to the accounting department, took monthly inventories, made up a monthly list of sales from information procured from sales slips which showed the name of the customer, the number of tires sold and the proceeds of the sale. In brief, he was in complete charge of the entire operation. His only assistant was a man who did the manual work of mounting tires for customers. Only Schultes and Reese had keys for the building.
In May 1956 Schultes received his last salary payment which represented his share of the earnings for the preceding month. Thereafter the department operated without profit. On August 31, 1956 Schultes and Reese took an inventory which showed an apparent shortage of stock of the value of $3,200. In September Reese called in his accountants to make an audit and on October 3 they notified him that "there was without question a shortage of stock." The same day Reese reported to Stricker, the insurance agent who had sold him the policy, that "there was a loss, that there was definitely something the matter," and in due course Stricker informed the defendant of the claim. At the end of October a second inventory was taken by Schultes and another of plaintiff's employees. This revealed an additional shortage of tires having a value of approximately $1,000. Reese then sought an explanation from Schultes. The latter said that *124 "a combination of things were wrong." The bookkeeping records might be inaccurate, and credits were due from Seiberling which "would reestablish whatever losses were indicated on [the] books at the time." Reese communicated with Seiberling and learned that Schultes' claim of substantial credits was without foundation. During November, at Reese's request, a representative of Seiberling came to the corporation's place of business. In Schultes' presence Reese informed the representative that Schultes claimed that credits were due from Seiberling which would "reestablish the loss." Thereafter Seiberling "reconfirmed or confirmed that all the credits" due "had come through." On a Saturday morning in November (the date does not appear in the record) Schultes' assistant reported that his superior had not appeared for work. On the following Monday Reese called the hotel at which Schultes had been living and learned that he had checked out and had left no forwarding address. He has been neither seen nor heard of since that day.
On June 21, 1957 plaintiff submitted a proof of loss to defendant on forms supplied by it. This document set forth the loss as being $4,149.33, such loss being described as follows:
"Between the dates of 5/31/56 and 10/31/56 tires were sold or disposed of without accounting for same, as per attached detail.
Chester A. Schultes, Manager of State Tire Co., left without notice and it is therefore assumed that he is the employee or one of the employees responsible for the loss."
The proof was returned to the plaintiff with the advice that it did not conclusively show a loss. However, the company at that time also advised that it was continuing its investigation under full reservation of rights and that if additional evidence were submitted by plaintiff the claim would be re-evaluated.
On July 17, 1958 a second proof of loss was furnished in which claim was made for the sum of $5,853.44. The "description of the loss and manner in which sustained" was:
*125 "Between the dates of April 25, 1955 and October 31, 1956 tires were sold or disposed of without account for same.
Chester A. Schultes, Manager of State Tire Co. left without notice and it is, therefore, assumed that he is the employee or one of the employees responsible for the loss.
Attached is a schedule of purchases and sales for the period April 25, 1955 to October 31, 1956 inclusive, as well as a computation of inventory shortage as of October 31, 1956."
On August 11, 1958 the claim was rejected for lack of "any evidence of dishonesty." The inventory shortage amounted to 289 tires.
Upon this state of facts defendant moved for a judgment of involuntary dismissal on the ground that the plaintiff had failed to prove a loss which came within the coverage of the policy. Specifically it was argued that (1) plaintiff's claim was governed by those provisions which relate to a loss based on "inventory shortage" among which is the requirement that the loss be conclusively proved to have been caused by the fraud or dishonesty of any of plaintiff's employees, and (2) that the evidence offered in plaintiff's behalf failed to so conclusively prove such a loss since it did not exclude every inference incompatible therewith. This motion was denied. These arguments are repeated here as one of the grounds of appeal. Plaintiff's position is that its proofs established, circumstantially at least, dishonest acts on the part of Schultes which resulted in the loss of specific "property," namely 289 tires, as distinguished from a mere inventory loss. Consequently plaintiff urges that the "conclusive" proof required by the policy when an "inventory shortage" is the basis of the claim is inapplicable to the facts of this case, and that here it was only necessary that the evidence submitted reasonably establish the loss. Moreover, plaintiff contends that even if it be deemed an inventory shortage and "conclusive" proof was required, the proof was "conclusive" as that term is defined in the law. In either event plaintiff submits that the circumstantial evidence rule advanced by the defendant is not that which applies to a civil case.
*126 In our review of the trial court's disposition of the motion we must consider the testimony and the inferences reasonably deducible therefrom in a light most favorable to plaintiffs. Swede v. Passaic Daily News, 30 N.J. 320, 328 (1959). It is generally recognized that fidelity bonds indemnifying employers against dishonest acts of their employees are to be broadly construed. Mortgage Corporation v. Aetna Cas. & Sur. Co., 19 N.J. 30, 36 (1955). Evidence of mere neglect or incompetence does not bring a loss within coverage indemnifying against dishonest acts of employees. Id., 19 N.J., at page 37. But our courts have held that the wide coverage of "fidelity" losses through fraudulent or dishonest acts of employees evidences a clear intent to protect the employer against employees' wrongful acts which display significant lack of probity, integrity or trustworthiness. Cf. Mortgage Corporation v. Aetna Cas. & Sur. Co., supra. In construing an insurance policy it must be kept in mind that presumably it is the intention of the insurer to have the insured understand that in the event of loss he will be protected to the full extent that any fair interpretation of the contract will allow. Danek v. Hommer, 28 N.J. Super. 68, 76 (App. Div. 1953), affirmed, o.b., 15 N.J. 573 (1954). Insurance contracts are to be liberally construed in favor of the policy holder and strictly construed against the insurer in order to afford the protection which the insured sought in applying for the insurance. Schneider v. New Amsterdam Cas. Co., 22 N.J. Super. 238, 242 (App. Div. 1952). Where from the language of the policy it is possible to adopt either of two reasonable interpretations, that construction will be adopted which permits recovery rather than the one which will deny coverage. Id., 22 N.J. Super., at page 243.
Under the guidance of these principles we are of the view that a fair construction of the "Employees Dishonesty Coverage" here involved is that where the fraudulent or dishonest act of an identifiable employee "reasonably establishes" a loss of "moneys, securities or other property" the insured is entitled to recovery; that where reliance is placed solely *127 upon an "inventory shortage" as a basis of recovery the fraudulent or dishonest act of such employee must be conclusively proven before recovery may be had; and whether the dishonest employee is identifiable or not does not alter the quantum of the necessary proof. In short, subject only to such claims as are posited entirely upon "inventory shortage" and so establish only "loss" as distinguished from "loss by reason of dishonesty," broad coverage was intended.
As we have already noted, during the period of 18 months in which plaintiff's inventory of tires was unaccountably depleted, Schultes had complete charge of the tire department. He alone purchased, sold and received the proceeds of sales. He alone was called upon to account for receipts. His was a one-man operation. Obviously the merchandise was not of a character which lent itself to shoplifting, nor is there the slightest evidence that it had been the subject of larceny by unidentifiable persons. Furthermore, the quantity of missing goods was such as to negate the idea that its disappearance was attributable to mere mistake or incompetence on Schultes' part. These circumstances when considered with Schultes' false explanation to Reese and with his sudden and unexplained disappearance while under fire, combined to create a permissible inference that it was his fraud or dishonesty which resulted in plaintiff's loss of property or the moneys received by Schultes from the sale of the same. The proof of an inventory shortage was merely a part of the factual complex from which a jury could legitimately conclude that the loss was due to "fraudulent or dishonest" acts of Schultes. In the circumstances, even though the amount of the loss was established through proof of the inventory shortage, it was not necessary for plaintiff to prove conclusively that it resulted from a fraudulent or dishonest act on the part of an employee as would have been required had not the nature and scope of Schultes' duties, his access to the merchandise and to the proceeds of sales and his conduct during the investigation of the shortage been shown.
*128 But assuming the policy provisions in question were construed as the defendant suggests they should be, the facts as outlined furnished ample basis for the jury to have concluded that the inventory shortage was conclusively proved to have resulted from the dishonesty of the plaintiff's employee. In Di Mieri v. Metafield, Inc., 126 N.J.L. 484, 487 (Sup. Ct. 1941), affirmed 127 N.J.L. 597 (E. & A. 1942), the court in defining "conclusive proof" within the meaning of the Workmen's Compensation Act as worded prior to its amendment in 1945 (N.J.S.A. 34:15-12), construed the phrase to mean "such proof that the fact finder, after hearing the testimony in support of the claim and contrasting and weighing it with that produced to rebut it, is clearly of the view that the claim has been sustained by evidence that is convincing in character." The court went on to say:
"So the qualifying word `conclusive,' as used in the statute, supra, is not to be regarded in a sense that imports to it a quality that will not tolerate challenge or contradiction; but rather in its ordinary sense that the proof is convincing and such that it justifies a conclusion that the statutory requirements of such case were proved. A rigid, inflexible construction of the phrase would require a norm or quality of proof, the equivalent of moral certitude. Such construction we cannot reconcile with the development of the law of evidence on the civil side in this state or elsewhere." (126 N.J.L., at pages 487-88)
While it does not appear that this definition has been adopted in the construction of an insurance contract in any cited case in this jurisdiction, there is ample federal authority on the point. In Morrow Retail Stores, Inc. v. Hartford Accident & Indem. Co., 111 F. Supp. 772 (D. Idaho 1953), the court cited Di Mieri in rejecting the very contention which defendant now projects and said:
"In deciding what meaning should be given to the words `conclusive evidence,' when used in an insurance policy, the context in which they appear and the purpose which the parties to the contract evidently had in mind should be considered. The words should be *129 given a reasonable construction consistent with such purpose. Here, if the assured is to be held to a high degree of proof, which defendant argues should be required, the insurance coverage of inventory shortage, caused by dishonest acts of unknown employees, would be practically valueless. Manifestly, it would be out of the question for the assured to prove incontrovertibly, or beyond the possibility of error, that a shortage of merchandise, disclosed by the taking of a physical inventory, was due to the dishonesty of some employee in a situation where the identity of the culprit was unknown to the assured. The cause of the shortage could be proved only by circumstantial evidence and by a preponderance of the probabilities, as the plaintiff has undertaken to prove it in the present case." (at page 774)
See also New Amsterdam Cas. v. W.D. Felder & Co., 214 F.2d 825 (5 Cir. 1954); Annotation, 169 A.L.R. 224. We are satisfied that the trial court properly denied defendant's motions for a judgment of involuntary dismissal.
It is also argued that the court erred in failing to adopt defendant's concept of the rule applicable to circumstantial evidence in ruling on the motion and in declining to charge defendant's written request in which the concept was stated. In support of its argument on this branch of the appeal, defendant relies on Gaytime Frock Co. v. Liberty Mut. Ins. Co., 148 F.2d 694 (7 Cir. 1945), in which the court affirmed a judgment entered in favor of the defendant at the close of the plaintiff's case. There the court held:
"Of course, it was not necessary that the plaintiff's proof should establish facts sufficient to convict the employee or employees of larceny, but in our case there was no direct or affirmative proof at all that plaintiff had suffered any loss by a theft or other dishonest act of any employee. To be sure, the fact that the shortages were caused by the dishonesty of plaintiff's employee or employees may be established by circumstantial evidence, but the evidence to establish that fact must be of such a nature that it is the only conclusion that can fairly or reasonably be drawn, that is to say, such evidence must fairly and reasonably exclude any other explanation." (Emphasis added.) (at page 695.)
Our research fails to disclose any subsequent citation of this case for the proposition that in a civil case based upon circumstantial evidence the plaintiff is bound to exclude every *130 hypothesis inconsistent with the nonliability of the person sought to be held, and is required to present evidence of such a nature that the liability of the defendant is the only conclusion which may fairly and reasonably be drawn therefrom. Moreover, this is not the law in this State. In Miller v. New Amsterdam Cas. Co., 94 N.J.L. 508, 511 (E. & A. 1920), the court said:
"We may add that it is this preponderance of the aggregate probabilities juridically termed `the weight of the evidence' which furnishes the legal standard of proof in civil causes, as contradistinguished from the rigid rule applicable in the trial of criminal causes, based on circumstantial evidence, which requires as a basis for conviction the elimination of every other reasonable hypothesis which could afford a rational explanation for the commission of the crime."
The conclusion reached by the court in Miller is in accord with the general rule followed in other jurisdictions. See, e.g., Farmers Produce Co. v. Aetna Cas. & Sur. Co., 238 Mich. 405, 213 N.W. 685 (Sup. Ct. 1927); Village of Plummer v. Anchor Cas. Co., 240 Minn. 355, 61 N.W.2d 225 (Sup. Ct. 1953); Jenrette Transp. Co. v. Atlantic Fire Ins. Co., 236 N.C. 534, 73 S.E.2d 481 (Sup. Ct. 1952). See also Caldwell v. St. Paul Mercury & Indem. Co., 210 Miss. 320, 49 So.2d 570 (Sup. Ct. 1950); Salley v. Globe Indem. Co., 133 S.C. 342, 131 S.E. 616, 43 A.L.R. 971 (Sup. Ct. 1926); Annotation, 62 A.L.R. 411 (1929). Circumstantial or presumptive evidence, as a basis for deductive reasoning in the determination of civil issues, is defined as a mere preponderance of probabilities, and therefore a sufficient basis for decision. Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 139 (1958); Jackson v. Delaware L. & W.R.R. Co., 111 N.J.L. 487 (E. & A. 1933).
Defendant also contends that the court erred in declining its request that the jury be instructed that the "mere negligence, mistake, or error in judgment would not ordinarily be considered a dishonest act. Acts resulting from *131 incompetence cannot be characterized as dishonest." We agree with the trial court's observation that the proofs afforded no reasonable inference that the disappearance of 289 automobile tires within the custody of Schultes could be attributed to "mere negligence, mistake, or error in judgment." We think the court properly declined the request, for to have done otherwise would have been to permit the jury to indulge in speculation, surmise or conjecture.
Finally it is argued that the court erroneously charged the jury as follows:
"The verdict, the possibilities of a verdict would be: one, a verdict in favor of the plaintiff for $5,000, that's one possibility. The second possibility is a verdict of no cause of action, which would be in favor of the defendant and against the plaintiff. Simplifying it further, it is either, it is either $5,000 one way, or the other way nothing."
As we have already noted, two proofs of claim were submitted to the insurance company, one in the amount of $4,149.33, the other in the amount of $5,853.44. The plaintiff, of course, had the burden of proving its loss by a preponderance of the evidence. At the trial the defendant offered evidence of a public accountant which tended to place in doubt the precise value of the missing automobile tires. The jury should have been permitted to determine the amount of plaintiff's loss in the light of all of the evidence and the inferences which the jury chose to draw therefrom. Accordingly, the judgment is reversed and a new trial ordered on the issue of damages only.