SUN INSURANCE COMPANY OF NEW YORK, Appellant,

v.

CULLUM'S MEN SHOP, INC., Appellee.

No. 20808.

United States Court of Appeals
Fifth Circuit.

May 20, 1964.

E. D. Fulcher, Augusta, Ga., Fulcher, Fulcher, Hagler & Harper, Augusta, Ga., of counsel, for appellant.

Joseph B. Cumming, Augusta, Ga., Cumming, Nixon, Eve, Waller & Capers, Augusta, Ga., of counsel, for appellee.

Before MARIS,* GEWIN and BELL, Circuit Judges.

MARIS, Circuit Judge:

The appellant, Sun Insurance Company of New York, hereinafter referred to as the defendant, appeals from a judgment entered in the District Court for the Southern District of Georgia on a jury verdict of $10,000 in favor of the appellee, Cullum's Men Shop, Inc., hereinafter referred to as the plaintiff, in an action brought by the plaintiff to recover under a comprehensive dishonesty, disappearance and destruction insurance policy issued by the defendant.[1] The controversy arises out of a claim in the amount of $10,000 by the plaintiff, owner of a retail store in Augusta, Georgia, for indemnification for the theft, ~~by unknown~~ employees during the 30 months period preceding November 7, 1961, of men's suits valued at $22,214.00. The complaint sought judgment in the amount of $10,000, the maximum limit of the policy, and asserted that the defendant had in bad faith refused to pay the claim and hence prayed for an award of 25 per cent penalty and $2,000 attorney's fees. The defendant denied liability on the ground that recovery was sought for an alleged loss caused by unidentifiable employees, the proof of which loss as to

---

* Of the Third Circuit, sitting by designation.

1. This action originally was brought in the Superior Court of Richmond County, Georgia, and removed by defendant to the federal court. Jurisdiction is based on diversity of citizenship and requisite amount.

its factual existence and as to its amount was dependent upon an inventory computation, and that a loss so proved was expressly excluded from coverage by the terms of the policy.[2] The defendant prayed for dismissal of the complaint and demanded a jury trial. Its motion to dismiss the complaint was overruled and the case was tried to a jury.

The evidence discloses that the plaintiff had discovered increasing shortages in its stock. During an investigation conducted by F.B.I. agents in another matter, one Charles Green, who was not an employee of the plaintiff, was discovered transporting a box containing four suits identified by the plaintiff as merchandise which should have been in its stock. Green was called as a witness by the plaintiff and testified that he had been convicted of larceny of merchandise from the plaintiff's store and that this had occurred under the following circumstances. He said that he would receive a call from another person, also not an employee, and then he would go to the rear of the plaintiff's store, reach in a back door, pick up merchandise placed there by an unknown person, which merchandise Green would then deliver to the person from whom he had received the call. This back door was ordinarily kept locked, only three employees having a key thereto. As a result of discovering Green with this merchandise, nine more suits were recovered, which the plaintiff also identified as having been stolen from its store. It is not contended on this appeal that this evidence was insufficient to raise an inference from which the jury could determine that there had been dishonesty on the part of an employee.[3]

The plaintiff sought to prove the amount of its claim through the testimony of T. L. Seigler, its manager and buyer, and J. C. Cullum, its merchandise manager. They testified that a record of men's suits had been kept in a "swatch book" since 1949, showing lot number, manufacturer, color, style, cost and retail price, and including, when possible, a sample or swatch of material to show color and pattern. When suits were purchased, a record was entered in the swatch book showing the number and

---

2. The pertinent provisions of the policy are:
"Item 3. Table of Limits of Liability Insuring Agreement I Employee Dishonesty Coverage-Form B $10,000.

\* \* \* \* \*

"INSURING AGREEMENTS
"EMPLOYEE DISHONESTY COVERAGE-FORM B
"I. Loss of Money, Securities and other property which the Insured shall sustain through any fraudulent or dishonest act or acts committed by any of the Employees, acting alone or in collusion with others, the amount of insurance on each of such Employees being the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement I.

\* \* \* \* \*

"EXCLUSIONS
"Section 2. This Policy does not apply:

\* \* \* \* \*

"(b) under Insuring Agreement I, to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of Money, Securities or other property which the Insured can prove, through evidence wholly apart from such computations, is sustained by the Insured through any fraudulent or dishonest act or acts committed by any one or more of the Employees;

\* \* \* \* \*

"LOSS CAUSED BY UNIDENTIFIABLE EMPLOYEES
"Section 4. If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the Insured shall be unable to designate the specific Employee or Employees causing such loss, the Insured shall nevertheless have the benefit of Insuring Agreement I, subject to the provisions of Section 2(b) of this Policy, provided that the evidence submitted reasonably proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, and provided, further that the aggregate liability of the Company for any such loss shall not exceed the Limit of Liability applicable to Insuring Agreement I.

\* \* \* \* \*"

3. Compare Savannah Wholesale Co. v. Continental Casualty Co., 5 Cir. 1960, 279 F.2d 706.

sizes of garments ordered, together with a swatch of material. When the garments were received by the plaintiff, sleeve tickets were attached to each garment showing lot and book numbers. When these garments were brought down for display on the racks, a mark was recorded in the swatch book. When a suit was sold the sleeve ticket was removed and dropped into a box kept for that purpose. At the end of the day all such tickets were checked against the swatch book and each garment sold was lined out. Thus, by checking the suits displayed for sale on the racks against those shown in the swatch book it could be determined that a suit was unaccountably missing if it was not on the rack and if it had not been lined out in the swatch book as sold, unless the sleeve ticket was in the box as sold on the day the check was made.

The list of missing suits compiled by the plaintiff as its proof of loss was determined by checking the garments on the racks against the swatch book in this manner. The list thus represented suits which were shown on the swatch book as on hand but which were actually missing from the display racks. It was further testified that, in addition, the plaintiff regularly took an inventory each year in which the total retail value of the stock was ascertained but that the proof of the plaintiff's loss was not computed from these inventories.

It was testified that the retail value of the missing garments was $21,427.15 and that their wholesale cost was $12,126.75. It was further stated that shoplifting did occur and that the normal expectancy was roughly one-half of one per cent of the annual volume of business, which in the case of the plaintiff, based upon a $500,000 annual volume, was estimated to be $2,500.00.

The defendant offered no evidence but moved for a directed verdict upon the ground that the proof of the plaintiff's claim was based upon an inventory computation, which motion the trial judge denied.

It was the plaintiff's contention that the swatch book was not an inventory but rather a current stock record and that the proof which was made up from the swatch book record was the result of an enumeration of individual missing suits and not a computation based upon an inventory. On this issue the trial judge charged the jury

"* * * that the defendant contends that the plaintiff is not entitled to recover on the ground that the loss alleged to have been sustained by theft is proved only by an inventory computation. I charge you that the word 'inventory' constitutes written records of merchandise and its value, and that 'computation' means the act of reckoning or estimating. Computation should not be confused with enumeration. Enumeration means to designate or specifically describe, to mention in detail or to reckon singly. So, if you find that the loss alleged to have been sustained by the plaintiff for which it is suing the defendant in this case has been established in a manner which consists of special designation and mentioning in detail, as against computing, which consists of estimating or reckoning a quantity of articles, then I charge you that this plaintiff is entitled to recover under the terms of the policy so far as it is affected by the exclusion from the policy which I have just described to you as being a defense of the defendant."

The jury, after some deliberation, returned to the courtroom for further instructions. This colloquy followed:

"The Court: Did you Gentlemen want to ask a question?

"A Juror: We would like to know if we can find that the insurance company is liable for a portion of the coverage of the policy, and also if the loss is to be computed on a cost or a retail price?

"The Court: If you find for the plaintiff, it would have to be for the full amount of the principal.

Now, as I tried to explain to you, they are asking also for attorneys' fees and penalties. You could find for the principal and not find attorneys' fees and the penalty, if you thought it was warranted by the law and the evidence.

"A Juror: We would have to find for the full amount if we find for the plaintiff?

"The Court: Yes, you would have to find for the full amount. You couldn't split it."

The jury returned a verdict for the plaintiff in the amount of $10,000 but found no bad faith on the part of defendant in denying liability and did not include a penalty or counsel fees in their verdict. Judgment was entered thereon and this appeal by the defendant followed.

Upon this appeal the defendant raises a number of questions. In the view we take of the case we need consider only two of these questions.

■ As has been said, the defendant, at the close of the plaintiff's testimony, moved for a directed verdict upon the ground that the plaintiff's proof was based upon an inventory computation and was, therefore, under the express terms of the policy, ineffective to establish its claim. The trial judge denied the motion and, as we have seen, instructed the jury that they might find from the evidence that the plaintiff's claim was based on an enumeration and not on an inventory computation and, that if they so found, the plaintiff would not be barred from recovery by the exclusion clause of the policy. The defendant now urges that this instruction, which permitted the jury to bring in its verdict for the plaintiff, was erroneous. The defendant's position is that proof of the existence of the loss and its amount was dependent solely upon an inventory computation which was excluded under the policy. So far as concerns the existence of a loss there is no merit whatever in this contention in view of the evidence relating to the 13 missing suits which were recovered. And so far as concerns the amount of the loss we cannot agree with the defendant's argument that the evidence did not support the finding by the jury that the plaintiff had proved the total amount of its loss by an enumeration of the missing suits which was not an inventory computation within the meaning of the policy. We see no error in the instructions given by the trial judge which permitted the jury to make this finding. The defendant urges that the instruction was inconsistent with the view taken in Fort Smith Tobacco & Candy Co. v. American Guar. & L. Ins. Co., D.C.Ark.1962, 208 F. Supp. 244, 254, in which the court accepted the following definition of the phrase in a similar policy provision:

> " 'An inventory computation is an inventory arrived at by taking a beginning inventory, adding purchases and deducting the cost of merchandise sold. A computed inventory loss, therefore, would be the difference arrived at by deducting an actual inventory from the inventory computation.  \* \* \* ' "

We fail to see any inconsistency, however. It is clear that in the present case proof of the amount of the loss did not depend upon an inventory computation such as that defined in the Fort Smith Tobacco & Candy Co. case but on the contrary consisted of an enumeration of each missing item, suit by suit, based upon a check of the stock record, the swatch book, against the stock actually on hand.

■ The other contention of the defendant which must be considered is that the trial judge erred in his supplemental instructions that if the jury found for the plaintiff, it "would have to be for the full amount of the principal". We think that in so limiting the function of the jury, the trial judge erred. We think he also erred in failing to answer the request of the jury for instructions as to whether the plaintiff's loss was to be computed on a cost or retail price basis. As we have seen, there was not

only the evidence derived from the swatch book record that suits of a cost value of $12,126.75 and retail value of $21,427.15 were missing, but there also was evidence that the plaintiff experienced shoplifting, a type of loss clearly not covered by the policy, but estimated to amount to $2,500 per annum, and there was the direct testimony that thirteen of the missing suits had been recovered by the police under circumstances from which the jury could infer that they had been taken with the connivance of employees of plaintiff. We cannot say that reasonable minds could not draw varying inferences from this testimony, and all of it had a bearing on the ultimate question as to whether the plaintiff had suffered a loss within the coverage of the policy and, if so, whether that loss amounted to at least $10,000 or was actually less than that sum. The trial judge properly submitted the first of these questions to the jury but he withdrew the second question from their consideration by the instruction to which the defendant now objects. This we think he should not have done.

Indeed, after the instruction had been given, counsel for the defendant objected to it and counsel for the plaintiff agreed that the objection was "theoretically right". And on this appeal, the plaintiff argues that this instruction was at most a harmless error and not prejudicial in this case and hence not a ground for setting aside the verdict. We cannot agree, however. The jury clearly was confused in respect to which valuation, cost or retail price, they should consider, a question left unanswered by the trial judge. The jury should have been permitted, after proper instructions on this point, to determine the amount of plaintiff's loss in the light of all the evidence and the inferences which it chose to draw therefrom. Georgia Co-operative Fire Ass'n v. Lanier, 1907, 1 Ga.App. 186, 57 S.E. 910; Continental Casualty Co. v. First Nat. Bank, 5 Cir. 1941, 116 F.2d 885, 887; Fireman's Fund Ins. Co. v. Borschow, 5 Cir. 1929, 30 F.2d 18, 19; Reese Cadillac Corp. v. Glens Falls Ins. Co., 1959, 59 N.J.Super. 118, 157 A.2d 331.

The judgment of the district court will be reversed and the cause remanded for a new trial.