**MEYER JEWELRY COMPANY, a Corporation, Appellant,**

v.

**GENERAL INSURANCE COMPANY OF AMERICA, a Foreign Corporation, Respondent.**

No. 52510.

Supreme Court of Missouri,
Division No. 1.

Jan. 8, 1968.

David Skeer, Leonard Rose, Kansas City, for appellant. Sheffrey, Ryder & Skeer, Kansas City, of counsel.

John R. Caslavka, Shughart, Thomson & Kilroy, Kansas City, for respondent; Shughart, Thomson & Kilroy, Kansas City, of counsel.

WELBORN, Commissioner.

This is an appeal by Meyer Jewelry Company from a summary judgment entered in favor of the General Insurance Company of America in an action by Meyer to recover $16,972.50, based upon the Employee Dishonesty Coverage of a Blanket Crime Policy issued by General to Meyer.

Meyer's petition alleged that it was engaged in the wholesale and retail jewelry business in Kansas City; that, from April, 1956 until May 11, 1964, it employed Cordie Thomas Hawkins as an assistant buyer;

that, from on or about June 30, 1961 to May 11, 1964, Cordie Thomas Hawkins conspired with Willis Hawkins to appropriate Meyer's merchandise for their own benefit by delivering items of inventory from the premises of plaintiff's store to their acquaintances and associates without charge, and by selling various items of merchandise to other persons without remitting the proceeds of such sales to plaintiff; that, after Cordie Thomas Hawkins was discharged from plaintiff's employ on May 11, 1964, plaintiff discovered the loss in the amount of $18,522.52.

The petition further alleged:

"6. Defendant Cordie Thomas Hawkins successfully concealed from plaintiff's knowledge the fraudulent and dishonest taking of said property in the manner and way hereinafter set forth. Said defendant was in charge of the record of the merchandise inventory, and the extensions and computations reported thereon during the period of her said employment, and she was thus able to and did pad the amount of items counted when physical inventory was taken under her direction and supervision, so that the report of such inventory did not truly indicate the items in stock that were actually on hand, but rather overstated the quantity thereof; and further, said defendant marked up the prices of items in stock to prices higher than the prices previously recorded therefor, so that the report of such physical inventory taken under her direction and supervision reflected a higher dollar value than if said items had been honestly reported. Thus the inventories taken under said defendant's direction and supervision during her employment, as aforesaid, including the last inventory so taken by said defendant on June 30, 1963, reflected only a normal and modest shortage, whereas at said time there was an actual shortage of approximately $18,522.-52."

The petition alleged that General Insurance Company of America had issued to Meyer its Blanket Crime Policy, with a $25,000 limit of liability, and including the following coverage:

"EMPLOYEE DISHONESTY COVERAGE. Loss of money, securities, and other property which the insured shall sustain through any fraudulent or dishonest act or acts committed by any of the employees, acting alone or in collusion with others * * *."

The petition alleged that Meyer had complied with the provisions of the policy regarding proof of loss, etc., but that General had refused to pay Meyer either the sum of $1,550.02, the amount of loss covered by the policy which could be proved "by direct evidence, without resort to any inventory computation or profit and loss computation," or the further sum of $16,-922.50, the amount of loss covered by the policy, "which sum can be proved by means of an inventory computation or a profit and loss computation." (This appeal concerns only the claim for the $16,972.50.)

By its answer, General admitted the issuance of a blanket crime policy to Meyer and that proof of loss had been submitted by Meyer to it. General otherwise denied the allegations of plaintiff's petition, and its answer further stated:

"(3) Without in any way limiting its general denial contained herein this Defendant states that said policy number BC 415 issued by General Insurance Company, a copy of which is attached hereto as Exhibit A contains the following provision:

'Section 2, Exclusions. This policy does not apply: (b) to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of money, securities or other property which the insured can prove, through evidence wholly apart from such computations, is sustained by the insured through any fraudulent or dishonest act or acts committed by any one or more of the employees.'

"That Section 2, referred to above specifically excludes from coverage any loss, the proof of which, either as to its factual existence, or the amount, is dependent on *inventory computation or a profit and loss computation and this Defendant is not liable therefor.*"

In response to interrogatories, Meyer enumerated approximately 90 transactions from January 12, 1962 to April 30, 1964, involving specified items of merchandise of a total value of some $1550 which it claimed Hawkins had appropriated. However, according to the stipulation of the parties filed in this appeal, those specific transactions were applicable to proof only of fact of loss insofar as the $16,972.50 claim was concerned. By further answers to interrogatories, Meyer stated that "insofar as proving amount of loss" ($16,972.-50) it would not be able to use any other method than "an inventory computation or a profit and loss computation."

On the basis of Meyer's answers to the interrogatories, General filed a motion for summary judgment, contending that by virtue of Meyer's admission that proof of the amount of its loss was solely dependent upon an inventory computation or a profit and loss computation, it had been conclusively shown that the loss was excluded under Section 2 of the Exclusions of the policy issued by General. The trial court sustained the motion for summary judgment, and, after its motion for new trial had been overruled, Meyer appealed.

Questions involving the meaning and effect of the "inventory computation" exclusion provision of employee fidelity policies are not altogether novel, although they are of comparatively recent origin, the provision having been incorporated in such policies since May, 1957. See Keech, "The Inventory Shortage Problem," ABA, Section of Insurance, Negligence and Compensation Law, 1963, pp. 52, 53. An early case involving the exclusion was Mid-Continent Stores, Inc. v. Central Surety and Insurance Corporation, 377 S.W.2d 567, decided by the Kansas City Court of Appeals. The

court of appeals affirmed a summary judgment in favor of the insurers, on the basis of the inventory computation exclusion, when the insured alleged a loss of $6100 due to fraudulent acts of one of its store managers, but conceded that it could not prove an amount of loss in excess of the $500 deductible amount "otherwise than by means of an inventory computation." 377 S.W.2d 567.

The court of appeals accepted the insurer's contention that the exclusion was "clear and unambiguous" and "excludes from coverage any loss the proof of which, either as to its factual existence or as to its amount, is dependent on inventory computation * * *." 377 S.W.2d 568. Other than reciting the language of the provision found in the exclusion, the court made no reference to the proviso, the portion relied upon by appellant here, who readily considers that, without the proviso, the exclusion would preclude its claim.

In 1966, the St. Louis Court of Appeals, in Locke Distributing Co. v. Hartford Accident and Indemnity Co., 407 S.W.2d 658, considered the effect of the exclusion and the proviso. Two employees of a beer distributor acknowledged falsification of the accounts receivable records and the use of money thereby obtained. An "audit" also revealed a beer inventory shortage, concerning which the employees made some statements acknowledging responsibility although they denied responsibility at the trial. The court of appeals held that the trial court should not have admitted in evidence the audit or testimony based upon it because "the existence and amount of the beer shortage at the Poplar Bluff warehouse was ascertained by [the auditor] by inventory computation." 407 S.W.2d 669. In answer to this contention that the fact of loss had been established by evidence independent of the inventory computation and therefore the proviso permitted use of such computation to establish the amount of the loss, the court stated:

"The words 'as to its amount' appearing in the absolute prohibition was clearly in-

tended to be carried over into the proviso, to prohibit the use of inventory computation in proof of the amount of the loss even though there be independent evidence of the act of stealing. The only effect of the proviso is to render inventory computations admissible as corroborative evidence, after proof of the misappropriation and the amount thereof by evidence independent of inventory computation." 407 S.W.2d 670.

In Gotcher Engineering & Manufacturing Co., Inc. v. United States Fidelity and Guaranty Company, 193 So.2d 115, decided by the Supreme Court of Mississippi in 1966, the court held that, by virtue of the inventory computation exclusion, a demurrer to a petition seeking recovery under an employee dishonesty policy was properly sustained inasmuch as the allegations of the petition were inadequate to take the case out of the exclusionary provision. In that case, the petition alleged that the employees involved had access to the employer's warehouse and (except for the president of the company) exclusive control thereof; that, on the date of employment (February 20, 1962), a physical inventory of the warehouse contents showed their aggregate value to be $26,923.79; that a subsequent inventory taken on September 5, 1963 showed a shortage of $13,671.15. The petition also alleged that investigation after the discovery of the shortage revealed that, prior to August 31, 1963, the employees had sold one of the missing items for $1,010 and appropriated the purchaser's check to their own use. Relying to a large extent upon the 1962 decision of the United States District Court for the Western District of Arkansas in Fort Smith Tobacco & Candy Co. v. American Guar. & L. Ins. Co., 208 F.Supp. 244, the Mississippi Supreme Court found the exclusion provision not ambiguous and the allegations of the petition insufficient to take the case out of the exclusionary provision (193 So.2d 118).

Respondent relies upon the three foregoing cases in support of the judgment below in this case. They afford strong support for the position of the respondent.

Respondent also relies upon the case of Cy Anschutz and Associates v. Conley, 74 N. M. 363, 393 P.2d 710, decided by the Supreme Court of New Mexico in 1964. In that case the court held that the exclusionary clause "set standards for proof of loss" and that an insurance broker from whom a policy had been purchased for protection "against loss of cash, parts and all inventory caused by fraudulent or dishonest acts" of the purchaser's employees had not, in furnishing a policy with such exclusion, failed to provide the coverage sought. The nature of the issue actually involved in that case makes it of slight value as authority on the issue here.

Appellant acknowledges that the Mid-Continent Stores and Locke Distributing cases, supra, offer no support for its position here. However, appellant urges that, in Mid-Continent, the court simply ignored the proviso, relied upon by appellant here, and that the statements in Locke, contrary to appellant's position here, were in fact dictum only. That the proviso was ignored in the Mid-Continent opinion can hardly be questioned. In Locke, the court did conclude that there had been no admissible independent evidence of the beer inventory shortage. The court also used language casting serious doubt upon the probative value of the evidence adduced by the audit. In any event, we have some difficulty in accepting the conclusion that the object of the proviso was to prescribe the conditions under which inventory computation would be acceptable as corroborative evidence of loss, established both in fact and as to amount, by evidence independent of the computation. The proviso, by its terms, eliminates the exclusion and, therefore, could hardly have been intended merely to prescribe a method of corroboration in a situation in which the exclusion would, in no event, apply.

Appellant has cited several cases in which courts in other jurisdictions have declined to apply the exclusion provision in the literal manner here urged by respondent.

In 1963, the Supreme Court of Wisconsin, in Tri-Motors Sales, Inc. v. Travelers Indemnity Co., 19 Wis.2d 99, 119 N.W.2d 327, found the proviso sufficiently ambiguous to call for resolution of doubt as to its meaning against the insurer and held that it did not preclude inventory computation to prove the amount of the insured's loss where there was independent evidence of the dishonesty of the employee involved. That case involved losses which an automobile dealer attributed to its parts manager. Evidence of theft by the manager of parts of the value of $494 was produced. The court found that, in such circumstances, proof of the amount of the claimed total loss as shown by inventory computation was not precluded by the exclusion. However, the evidence offered was held insufficient to support a finding in favor of the insured, the loss having occurred over a period of 14⅔ months, according to the inventory computation and the employee involved having been employed for only six months of the period covered.

Both appellant and respondent have cited the 1965 decision of the Kentucky Court of Appeals in Kentuckiana Sales, Inc. v. Security Insurance Company of New Haven, 394 S.W.2d 744. Respondent points to the court's rejection of the inventory computation to prove merchandise inventory loss. Appellant, however, notes that the court did examine the evidence for independent evidence of loss, contending that the strong indication is that the court would have permitted the inventory computation had there been proof other than the inventory computation. To us it appears that, had the court found such independent evidence of loss, the inventory computation would have been received as evidence of the amount of loss. We do acknowledge that the court referred to the view followed in the Tri-Motors case, supra, and what it described as the "contrary" view of Mid-Continent Stores, supra, without further expression as to which view it would follow.

Respondent pointed out that the Mississippi Supreme Court, in Gotcher Engineering, supra, relied strongly on Fort Smith Tobacco & Candy Co. v. American Guar. & L. Ins. Co., D.C., 208 F.Supp. 244. In that case the employee involved had admitted embezzling $2,851.65, which he repaid to the insured. There was also a claim based upon an inventory shortage of cigarettes and other items of merchandise handled by the insured. The court refused to allow recovery for inventory loss on items other than cigarettes. Recovery for the cigarette shortage as shown by inventory computation was apparently allowed on the theory that the employee's admission that he had tampered with the cigarette inventory totals afforded a sufficient basis for concluding that the cigarette loss "was in fact due to the fraud or dishonesty" of the employee. 208 F.Supp. 265. In that respect, the case supports appellant's position here.

In another federal case, Sun Insurance Company of New York v. Cullum's Men Shop, Inc., 5th Cir., 1964, 331 F.2d 988, the court allowed a distinction between an inventory computation and an "enumeration." In that case the evidence connected the store's employees with the theft of some 13 suits. Recovery, under a comprehensive dishonesty, disappearance and destruction policy, containing the same exclusion as the policy in this case, was sought for the loss of suits valued at some $22,000 over a 30-months' period. The store was permitted to use its records to show, item by item, the suits which were unaccountably missing. The court held that the plaintiff "had proved the total amount of its loss by an enumeration of the missing suits which was not an inventory computation within the meaning of the policy." 331 F.2d 991.

The most recent case on this subject which has come to our attention is a 1967 decision of the Appellate Division of the Superior Court of New Jersey in Hoboken Camera Center, Inc. v. Hartford Accident and Indemnity Company, 93 N.J.Super. 484, 226 A.2d 439. In that case, as in the case now before us, the issue was on a summary judgment favorable to an insurer which in-

voked the exclusion clause. As in the present case, the plaintiff was relying upon specific incidents of employee dishonesty, together with an analysis of its inventory control records for proof of the *amount* of the loss. The records indicated a loss of $42,705.22. The specific incidents were three in number, each involving a loss of less than $250. "The trial court read the [exclusion] clause literally and decided that since proffered proofs of specific depredations by employees were of less than the deductible amount of $250 in each case, and since establishment of any larger loss was entirely dependent upon inventory records, the prohibition of resort thereto by the exclusion clause foreclosed the maintenance of plaintiff's cause of action." 226 A.2d 443.

In reversing the trial court's judgment, the Appellate Division examined the history of the exclusion clause. It analyzed at length the cases referred to above (except the Locke Distributing Co. and Gotcher Engineering cases). The court declined to follow the literal application of the exclusion which the Kansas City Court of Appeals took in Mid-Continent Stores, supra. The court was not completely satisfied with the approach to a more flexible application found in the Tri-Motors Sales, Kentuckiana Sales, Fort Smith Tobacco and Sun Insurance Company cases, supra. The court concluded that a flexible approach was called for "upon principles of vindication of the fair expectations of purchasers of such insurance." 226 A.2d 445. We quote, at some length, from the court's ultimate conclusion:

"We are satisfied, for the reasons already stated, that giving the inventory-exclusion clause its literal meaning in this case would be to nullify to a considerable extent the benefits fairly contemplated by the insured when it purchased the policy. On the other hand, we cannot say that insurers do not have a legitimate concern in attempting to protect themselves against claims which are built upon self-created inventory records. Such records, generally honestly and accurately kept by businessmen, are sometimes not deserving of the full measure of that description, and even if they are, will generally be inexact reflections of actual inventory shortages if computed on the basis of assumed average mark-ups or profit margins (see discussion supra). The reluctance of insurers to accept inventory or profit and loss computations as proof of the fact or amount of losses alleged to result from dishonesty of employees is therefore understandable. See Kurland, ["Claims for Inventory Shortage," 33 Insurance Counsel Journal (July, 1966), p. 397]. The judicial problem, therefore, is one of fair accommodation of the general right of an insurer to fix his undertaking, cf. Linden Motor Freight Co. Inc. v. Travelers Ins. Co., 40 N.J. 511, 525, 193 A.2d 217 (1963), and that of the general public, in buying insurance containing frozen, unbargained-for policy limitations, to get the degree of coverage it reasonably envisages.

"Such accommodation, in our judgment, should preclude recovery by the insureds under this bond if they had no proof whatever of an employee-connected loss other than inventory or profit and loss computations, no matter how reliable in the particular case. On the other hand, inventory records may by their very nature constitute inherently indispensable proof of an allowable claim under a fidelity bond in one or the other or both of two respects: (a) as the only available proof of the full amount of a loss, there being some appreciable proof from other facts or circumstances of a loss caused by employee-dishonesty; (b) as corroboration sufficient to make a case for the fact-finder of the fact of an employee-connected loss where independent proof thereof, considered alone, might be insubstantial. To deny an insured the right to adduce proof of inventory records for either of these purposes might in a particular case defeat justice by precluding recovery on a meritorious claim by use of the only proofs reasonably available to the insured and probative thereof. So to do would contravene public policy, not only in defeating the rea-

sonable expectations of coverage of the purchaser of the insurance but also in allowing a private agreement to nullify the inherently probative effect of relevant evidence. Cf. Garden State Plaza Corp. v. S. S. Kresge Co., supra (78 N.J.Super. 485, at pp. 500–503, 189 A.2d 448)." 226 A.2d 447–448.

 The New Jersey court's conclusion is in accord with well-established principles applied by the courts of this state in the construction and application of policies of insurance. We follow a construction favorable to the insured wherever the language of a policy is susceptible of two meanings, one favorable to the insured, the other to the insurer. Hammontree v. Central Mutual Insurance Company, Mo.App., 385 S.W.2d 661, 665[1, 2]; Meyers v. Smith, Mo.Sup., 375 S.W.2d 9, 16–17[10, 11]; Corder v. Morgan Roofing Co., 355 Mo. 127, 195 S.W.2d 441, 446[5, 6]. Provisions restricting coverage are particularly construed most strongly against the insurer. " * * * [A]n insurance policy being a contract designed to furnish protection will, if reasonably possible, be interpreted so as to accomplish that object and not to defeat it, and, if terms of the contract are susceptible of two possible interpretations and there is room for construction, the provisions limiting or cutting down on the coverage of the policy, or avoiding liability therefor, will be construed most strongly against the insurer." Brugioni v. Maryland Casualty Company, Mo. Sup., 382 S.W.2d 707, 710–711[2, 4]; Giokaris v. Kincaid, Mo.Sup., 331 S.W.2d 633, 638–640[3, 4], 86 A.L.R.2d 925; Varble v. Stanley, Mo.App., 306 S.W.2d 662, 665[3]. In our opinion, the provision here in question is of such ambiguity as to call for the application of these rules, which, in turn, causes us to conclude that the trial court erroneously sustained the motion for summary judgment in this case. Hoboken Camera Center, Inc. v. Hartford Accident and Indemnity Company, supra.

 In reaching this conclusion, we necessarily reject the insurer's contention that the clause in question is free from ambiguity. Respondent bases such contention, in part, upon the rule that "the same words used in different clauses will be understood to be used in the same sense, * * *." 44 C.J.S. Insurance § 294, p. 1161. Maupin v. Southern Surety Co., 205 Mo. App. 81, 220 S.W. 20. Respondent contends that the term "loss" as it appears in the proviso must be accorded the same meaning as in the first portion of the exclusion clause. Application of that rule here would, in effect, make the proviso meaningless. In our opinion, there is an ambiguity which we resolve in favor of the insured.

Reversed and remanded.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.