NIB FOODS, INC v INSURANCE COMPANY OF NORTH AMERICA

1. INSURANCE—EVIDENCE—EMPLOYEE DISHONESTY—INVENTORY COMPUTATIONS.

Inventory or profit and loss computations may be used to help prove the amount of an insured's loss under a dishonesty of employees clause of an insurance policy where there is independent evidence establishing the employee dishonesty.

2. INSURANCE—EVIDENCE—EMPLOYEE DISHONESTY—INVENTORY COMPUTATIONS—PROFIT AND LOSS.

There was sufficient independent evidence establishing employee dishonesty to warrant the introduction of inventory and profit and loss computations to prove the amount of the loss in an action for recovery under the dishonesty of employees clause of an insurance policy where there was evidence that various accounts were opened by customers, that customers claimed to have paid their bills although their accounts did not show the payments, that the suspected employee had been seen taking money from the cash register without putting a receipt in the register, that on one occasion it was discovered by another employee that the reserve cash of the business was short, and that the suspected employee disappeared without explanation shortly after the president of the plaintiff insured began checking the inventory.

Appeal from Wayne, Joseph G. Rashid, J. Submitted June 16, 1975, at Detroit. (Docket No. 20691.) Decided August 26, 1975.

Complaint in the Common Pleas Court of the City of Detroit by NIB Foods, Inc. against Insurance Company of North America to recover under an insurance policy dishonesty losses because of a theft by an employee. Judgment for plaintiff in a

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 43 Am Jur 2d, Insurance § 979 *et seq.*

lesser amount notwithstanding the verdict of the jury for a greater amount. Plaintiff appealed to circuit court. Affirmed. Plaintiff appeals by leave granted. Reversed and jury verdict reinstated.

*Bacalis & Associates, P. C.,* (by *James C. Klemanski),* for plaintiff.

*Harvey, Kruse & Weston, P. C.,* (by *Dane A. Lupo),* for defendant.

Before: T. M. BURNS, P. J., and QUINN and M. J. KELLY, JJ.

T. M. BURNS, P. J. Plaintiff, a Howard Johnson's licensee, brought this action in the Common Pleas Court of the City of Detroit to recover for "dishonesty losses" that were allegedly covered by an insurance policy issued by the defendant. The losses were allegedly due to theft by the manager of the Howard Johnson's restaurant, David Feathers.

At trial some direct and indirect evidence of plaintiff's loss was presented, including evidence of inventory records and labor productivity. During it's instructions to the jury, the court told the jury that they could consider all the evidence presented to determine plaintiff's loss, and further instructed them to return special verdicts as to the dishonesty of plaintiff's employee and the total amount of damages.

While the jury was deliberating, the trial court ruled that the evidence of inventory records and labor productivity could not be considered by the jury because of an exclusion clause in the insurance policy. On its own motion, the trial court then reserved the right to issue a judgment notwithstanding the verdict. The jury then returned

two verdicts, finding first that the plaintiff's employee was guilty of dishonesty and second, that the total amount of damages was $5,594.43. After the jury was excused, the trial court exercised the right it had earlier reserved and entered a judgment for the plaintiff in the amount of $2,845.22, plus costs of $300. Plaintiff then appealed to the Wayne County Circuit Court. That court affirmed the judgment of the trial court, and we granted plaintiff leave to appeal.

Plaintiff asks this Court to reinstate the jury's verdict. Plaintiff contends that the trial court erred reversibly when, as a basis for reducing the jury's verdict, it held that the evidence of inventory records and labor productivity was barred by the exclusion clause of the insurance policy.

The insurance policy issued by the defendant agreed to cover plaintiff against:

"(b) * * * loss of money, securities, and other property which the insured shall sustain through any fraudulent or dishonest act or acts committed by any of the employees, acting alone or in collusion with others, the amount of insurance on each of such employees being the amount stated in the table of limits of liability applicable to this insured agreement * * * ".

However, coverage was limited by § 2(b) of the policy, which provides in relevant part that:

"This endorsement does not apply:

* * *

"(b) under insuring agreement 1(a) or 1(b) to loss, or to that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation; provided, however, that this paragraph shall not apply to loss of money, securities or other property which the insured can

prove, through evidence wholly apart from such computations, is sustained by the insured through any fraudulent or dishonest act or acts committed by any one or more of the employees."

Plaintiff claims that the aforementioned exclusionary clause is only applicable when there is no independent evidence of dishonest acts committed by employees. Since there was independent evidence of employee dishonesty in this case, says plaintiff, the inventory and profit and loss calculations could be considered by the factfinder in order to help establish the amount of the loss.

Our research efforts have failed to uncover any prior Michigan cases interpreting this particular exclusionary clause. However, the identical clause was considered in *Dunlop Tire & Rubber Corp v Fidelity & Deposit Co of Maryland*, 479 F2d 1243, 1246 (CA 2, 1973), where the Court stated:

"On its face, Section 2(b) appears to permit only one proper interpretation. The language preceding the first semicolon clearly indicates that a claim at all dependent upon an inventory or profit and loss computation is to be excluded from the coverage of the policy. The insured cannot depend upon such evidence to establish his prima facie case. The language following the first semicolon indicates, however, that *where the insured has some independent evidence that a loss was caused by employee fraud or dishonesty, the inventory or profit and loss computation will be admitted as corroborative evidence to help the insured meet his burden of proof.*" (Emphasis added.)

Moreover, numerous other cases have held that where there is independent evidence establishing employee dishonesty, inventory or profit and loss computations may be used to help prove the amount of the loss. See *Gulf Enterprises, Inc v*

*Maryland Casualty Co,* 267 So 2d 733 (La App, 1972), *Sommer v General Insurance Co of America,* 22 Ohio App 2d 149; 259 NE2d 142 (1970). *American Fire & Casualty Co v Burchfield,* 285 Ala 358; 232 So 2d 606 (1970), *Meyer Jewelry Co v General Insurance Co of America,* 422 SW2d 617 (Mo, 1968), *Hoboken Camera Center, Inc v Hartford Accident & Indemnity Co,* 93 NJ Super, 484; 226 A2d 439 (1967), *Tri-Motors Sales, Inc v Travelers Indemnity Co,* 19 Wis 2d 99; 119 NW2d 327 (1963). We subscribe to this point of view and, therefore, we must now determine whether there was independent evidence establishing employee dishonesty in the case at bar.

At the trial, there was record evidence indicating that various accounts were opened by customers for services rendered by plaintiff restaurant. While some customers denied running up their bill, others stated that money was paid, including one customer who refused to pay his bill claiming that he had paid Mr. Feathers the $250 in cash. There was also introduced into evidence numerous accounts which did not show that the bill for services rendered had been paid, although the customers in question claimed they had already paid their bills. There was also testimony from two former employees of Mr. Feathers. A former assistant manager testified that on more than one occasion he saw Mr. Feathers take money out of the cash register without placing a receipt in the register. Another former employee corroborated this testimony. The former assistant manager also testified that on one occasion while checking the reserve cash he discovered that it came up $570 short. Furthermore, the unexplained disappearance of Mr. Feathers shortly after Mr. Hyames, the president of the plaintiff company, began

checking the inventory, supports a strong inference of dishonesty on the part of Mr. Feathers.

After reviewing all the evidence presented in this case, we conclude that the independent evidence presented was sufficient to warrant a jury finding that Mr. Feathers was guilty of dishonest acts. Since there was independent evidence establishing Mr. Feathers' dishonesty, it was proper for the jury to consider inventory and/or profit and loss computations. Therefore, since the trial court, in entering a judgment notwithstanding the verdict for the plaintiff in the amount of $2,845.22 excluded from consideration the computations in determining the amount of damages, the jury's verdict must be reinstated.

The judgments of the circuit court and common pleas court are reversed and the verdict of the jury is hereby ordered reinstated. Costs to plaintiff.